OPINION
On June 23, 1998, appellant, Nick Heropulos, was charged with one count of domestic violence in violation of R.C. 2919.25. Said charge arose from an incident involving one Deborah Davenport. A jury trial commenced on September 14, 1998. A mistrial was granted and the case proceeded to a jury trial the following day, September 15, 1998. The jury found appellant guilty as charged. By judgment entry filed September 17, 1998, the trial court sentenced appellant to one hundred eighty days in jail, ninety days suspended, and imposed a $500 fine plus court costs. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS THEREBY VIOLATING APPELLANT'S RIGHTS UNDER THEFIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 19, ARTICLE I OF THE OHIO CONSTITUTION.
II. THE PROSECUTOR'S DISCRIMINATORY USE OF PEREMPTORY CHALLENGES VIOLATED THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
III. THE TRIAL COURT ERRED IN NOT ORDERING A MISTRIAL FOLLOWING NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT WHICH DENIED APPELLANT A FAIR TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE OHIO AND UNITED STATES CONSTITUTION.
IV. THE JURY VERDICT FINDING APPELLANT GUILTY OF DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 I
Appellant claims the prosecutor's disregard of a court order that resulted in the September 14, 1998 mistrial bars his retrial under the theory of double jeopardy. We disagree. In State v. Uskert (1999),85 Ohio St.3d 593, 595, the Supreme Court of Ohio discussed double jeopardy as follows: As this court recognized recently, 'the Double Jeopardy Clause of each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.' Gustafson [State v. (1996)], 76 Ohio St.3d at 432,668 N.E.2d at 441, citing United States v. Halper (1989), 490 U.S. 435, 440,109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496.
The general rule is that retrial is not barred when a defendant requests a mistrial and same is granted on his/her behalf. However, an exception exists when the defendant is provoked into requesting the mistrial due to prosecutorial misconduct: * * * [t]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.
Oregon v. Kennedy (1982), 456 U.S. 667, 679.
In response to appellant's request for a bill of particulars, appellee, the State of Ohio, filed the following on July 9, 1998: On or about the 16th day of June, 1998, the Defendant Nick J. Heropulos was charged with Domestic Violence for attempting to cause or causing physical harm to a family or household member by punching Deborah D. Davenport, the mother of his child, in the head and chest area, leaving visible marks. The incident occurred at 301 Donner avenue, S.W., North Canton, Stark county, Ohio 44720.
On September 3, 1998, defense counsel requested a motion in limine "to limit any and all testimony, physical evidence and reports/records to those pertaining to the alleged events of June 16, 1998 against one Deborah Davenport only." The trial court conducted a hearing on said motion on September 10, 1998 and ruled from the bench as follows:
BY THE COURT: Okay. You guys have to understand I'm getting everything in a vacuum here, okay? And it's hard for me to say what's relevant and what's not relevant. Again, I've overruled the motion for sanctions and let's do this from this point on with — with these other incidents unrelated to the incident that Mr. Heropulos is charged with. Don't talk about it in voir dire. Don't talk about it at opening. If either of you want to delve into that, you'll approach the bench at that point and we'll take it from there. It's hard for me to determine what's relevant and what's not when I have absolutely no idea what the, you know, what the evidence is in this case. What — what the allegations, that type of thing.
September 10, 1998 T. at 55.
Thereafter, the prosecutor offered the following explanation to the trial court:
BY MR. FORCHIONE: Okay. First of all, Your Honor, I — I want to just be real up front. I plan on only presenting the evidence of June 16th, of that incident. Now, I'm starting to — better make sure that — ye, June 16th. Okay. We've been throwing allot (sic) of names at you and without knowing the case I'm sure it can be somewhat confusing, so I just want to give you an idea of what we have here. Mr. Heropulos is still married to his wife Patty and has children there. He has a child with Deborah Davenport who is the alleged victim in this case. He also has a child with Connie Hamilton. Right now he has a girlfriend named Rebecca Vanderhoff, okay?
Id. at 65-66.
By judgment entry filed September 11, 1998, the trial court ordered the following: Defendant's 'Motion in Limine' filed September 3, 1998 and the State of Ohio's 'Motion in Limine' filed September 8, 1998 are both taken under advisement. The Court intends to rule on any and all issues involving alleged events that occurred prior and subsequent to June 16, 1998 at the appropriate time during trial. The court advises both counsel not to discuss any of these issues during voir dire or the opening statement portions of the trial.
At the commencement of the September 14, 1998 trial, the trial court reiterated his prior ruling as follows:
BY THE COURT: All right, and just so you know, since he's not, since we're no longer talking about any subsequent events, there's — I filed by ruling that the Court intends to rule on any and all issues involving alleged offenses that occurred. Now we're only talking about prior to June 16th at the appropriate time during trial. The Court advises both Counsel not to discuss any of these issues during voir dire or the opening statement portions of the trial and you will talk to me at sidebar before you get into them, okay. * * *
September 14, 1998 T. at 12.
On direct examination, Ms. Davenport proceeded to describe in narrative form the events of June 16, 1998, testifying as follows:
Q. Now, during the late evening hours, will you tell the ladies and gentlemen of the jury, did anything unusual happen?
A. Yes.
Q. Tell us what happened.
A. Ahh, somebody came to my door and I went to open the door and I saw that it was Nick, and I tried to shut the door so he wouldn't come in because he was obviously very upset. Ahh, he's a lot stronger than I am, and as he pushed the door open, his hand slipped and hit me in the face. And I yelled at him that he needed to get out or I was going to call the police, and at that time he came in and hit me again and knocked me to the floor and once again I told him that he needed to leave or I was going to call the police and he hit me in the face a third time and he was on top of me and at that point he reached down into a pouch and pulled out a weapon and put it in my face and told me to keep my mouth shut and that if I was going to be giving it out, he was going to get some, and at that point I was sexually assaulted.
Id. at 202-203.
Defense counsel immediately moved for mistrial. Id. at 203. Upon inquiry by the trial court, the prosecutor admitted he knew Ms. Davenport was going to say that appellant had sexually assaulted her that evening. Id. at 205. The trial court granted the motion for mistrial, finding the following via judgment entry filed September 15, 1998: It is the Court's opinion that the witness (Deborah Davenport) through her testimony has violated the prior 'Motion in Limine' oral order of this Court on September 10, 1998 and written order of this Court on September 11, 1998. The Court concedes that the violation may have been inadvertent, however, it is the Court's opinion that the comments of the witness may have prejudiced or colored the outcome of this case for the Defendant.
Appellant argues the violation was a purposeful violation of the trial court's prior orders. We find with a reading of the entire motion transcript, the discussion was about other acts on other days and was not centered upon any non-charged offense of June 16, 1998. At all times, the prosecutor assured the trial court that only the events of June 16, 1998 would be discussed. Technically, the trial court's order was not violated. Under the legal theory of res gestae, all of the events of the evening of June 16, 1998 were relevant and subject to a determination as to whether their probative value was substantially outweighed by the danger of undue prejudice. See, Evid.R. 403. It is unfortunate the trial court, prosecutor and defense counsel appeared to have been operating on different planes resulting in confusion. We are convinced the trial court's final determination, that a mistrial without prejudice was the proper remedy, was appropriate. We fail to see any undue prejudice to appellant as a result of the mistrial. Appellee had nothing to gain from the inadvertent violation and a new jury was impaneled. We find no violations under the theory of double jeopardy. Assignment of Error I is denied.
 II
Appellant claims the prosecutor, in exercising his three peremptory challenges on the only men on the panel, created an all female jury thereby violating the Equal Protection Clause. We agree. A defendant in a criminal trial has the "right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." Batson v. Kentucky (1986),476 U.S. 79, 85-86. The use of a peremptory challenge by a prosecutor is subject to analysis under the Equal Protection Clause. Id. In Hernandez v. New York (1991), 500 U.S. 352, 358-359, the United States Supreme Court followed Batson, stating as follows: In Batson, we outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. * * * First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. * * * Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. * * * Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. (Citations omitted.)
Although the Batson test is related to racial discrimination, the Supreme Court of the United States has extended the test to gender discrimination. See, J.E.B. v. Alabama (1994), 511 U.S. 127. During voir dire, defense counsel never cited to Batson or its progeny, but did argue that all the male jurors were being excused by appellee: BY MR. LO DICO: I — what — what I'm contemplating now is that my client may end up with a jury of all women. Maybe not now, but the fact of the matter is, is that really representative? A panel of his — of his accusers, I — I — okay.
* * *
BY MR. LO DICO: I — I'm — I make a motion for a mistrial . . .(NOISE FROM MICROPHONE). The prosecution has literally attempted to get an all female jury. He's used his three pre-empts to knock off three men. It is unconstitutional for my client to be tried by a domestic violence jury containing all eight women. I — I at least thought by giving him the courtesy of bringing up my concern, he would waive that Sixty-four, but he did not.
* * *
MR. LO DICO: I would just make a motion at this time that regards of what happens now, that this jury must be dismissed and we start all over again.
T. at 157-158.
The trial court did not seek a gender neutral reason from the prosecutor for the three peremptory challenges nor did it make an independent determination of purposeful discrimination. T. at 159. We note defense counsel exhibited an indifferent attitude in the selection of alternate jurors. When asked about peremptory challenges to the alternate jurors, defense counsel stated "I could care less. That's fine." T. at 162. After the jury panel was set, defense counsel again made an attempt to challenge the all female jury:
BY MR. LO DICO: Just for the record, I would like to indicate that I will look at this venire as — as unconstitutional. That the State utilized its pre-empts as it would in a case where they exclude black jurors. We have a domestic violence case which he systematically used three pre-empts to get rid of every man on the jury. Now we have all women. We have a juror that I try to excuse for cause and the Court said no whose daughter is a victim of domestic violence. We now have a juror who stands up and makes a face when she's called. Now I — I — I can't have her on the jury with that. That expression. And — and now I'm stuck back with two alternates with no pre-empts left. I mean, I ask this entire panel be dismissed and we start all over again.
T. at 165-166.
The trial court denied the motion without any statement by the prosecutor or any independent determination. T. at 167. We note defense counsel very inarticulately stated his objection without citing any case law, essentially leaving the court adrift. We are also mindful that in municipal court cases, the issue of gender neutral juries is a rarity. Nonetheless, we find the principles of Batson were not followed sub judice. In addition, after a review of the record, we find out very little about the excused jurors. Juror No. 56 stated domestic violence was a crime whether the victim was a man or a woman. T. at 116. Juror No. 54 stated he knew very little about domestic violence, just what he read in the papers. T. at 104. This juror lived in North Canton where the investigation occurred and he had a friend who is a "Summit County sheriff." T. at 121. Juror No. 64 stated domestic violence was a problem and the law was necessary. T. at 117. This juror had children. T. at 142. Based upon the very limited information in the record, we find the trial court erred in failing to require the prosecutor to present a gender neutral reason for the peremptory challenges and in failing to make a determination on purposeful discrimination. Assignment of Error II is granted.
 III, IV
Based upon our decision in Assignment of Error II, these assignments of error are moot.
The judgment of the Canton Municipal Court of Stark County, Ohio is hereby reversed. Appellant's conviction is vacated and the case is remanded to the trial court for new trial.
By Farmer, J. Gwin, P.J. and Milligan, V.J. concur.