DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Richard Engler has appealed from a judgment of the Wadsworth Municipal Court which found him guilty of one count of driving under the influence of alcohol, a violation of R.C.4511.19(A) (1), and one count of driving with a prohibited breath-alcohol content, a violation of 4511.19(A) (3), and sentenced him accordingly. This Court affirms.
 I.
On August 9, 1997, at approximately 1:00 a.m., Defendant was stopped on West Street in Wadsworth, Ohio, after a police officer noted that his vehicle had been weaving in the road to the point of going left of center several times. Officer Reinke noted that Defendant's eyes were slightly red, and he detected a slight odor of alcohol. When he asked Defendant for his driver's license, Defendant had difficulty removing it from his wallet. Officer Reinke asked Defendant how much alcohol he had consumed. Defendant admitted to having a few drinks around 10:00 that evening. Accordingly, the officer asked Defendant to step from his vehicle to undergo field sobriety testing.
Based on Defendant's driving and his poor performance on the sobriety tests, he was arrested. He was charged with one count of driving under the influence of alcohol, a violation of R.C.4511.19(A) (1), one count of driving with a prohibited breath-alcohol content, a violation of 4511.19(A) (3), and one count of failure to control/weaving, a violation of Codified Ordinances of the City of Wadsworth 331.34. On September 15, 1997, Defendant moved the trial court to suppress all statements that he made to the police as well as the results of his breath-alcohol test. After an evidentiary hearing, the trial court denied the motion.
On December 1, 1997, Defendant moved the court to dismiss the charges of operating a motor vehicle while under the influence of alcohol and operating a motor vehicle with a prohibited breath-alcohol content. He argued that because he had paid a reinstatement fee to the bureau of motor vehicles, double jeopardy prohibited the state from seeking further punishment against him. The trial court denied his motion.
On December 29, 1997, Defendant entered a plea of no contest to one count of driving under the influence of alcohol and one count of driving with a prohibited breath-alcohol content. The State agreed to dismiss the count of failure to control/weaving. The court found Defendant guilty on both counts and sentenced him accordingly. Defendant timely appealed, asserting four assignments of error.
 II.
A.
 Payment of the license reinstatement fee imposed by R.C. 4511.191(L) constitutes a punishment, thereby barring any subsequent state sanctions against the Defendant as violative of the Double Jeopardy Clauses of the Ohio and United States
Constitutions.
 In his first assignment of error, Defendant has argued that, because the reinstatement fee constituted punishment, the subsequent criminal sanctions violated his right against double jeopardy. This Court disagrees.
 The statute in effect at the time of Defendant's suspension, former R.C. 4511.191(L), provided:
 At the end of a suspension period under this section, section 4511.196 [4511.19.6], or division (B) of section 4507.16 of the Revised Code and upon the request of the person whose driver's or commercial driver's license or permit was suspended and who is not otherwise subject to suspension, revocation, or disqualification, the registrar shall return the driver's or commercial driver's license or permit to the person upon the occurrence of all of the following:
 (1) A showing by the person that the person had proof of financial responsibility, a policy of liability insurance in effect that meets the minimum standards set forth in section 4509.51 of the Revised Code, or proof, to the satisfaction of the registrar, that the person is able to respond in damages in an amount at least equal to the minimum amounts specified in section 4509.51 of the Revised Code.
 (2) Payment by the person of a license reinstatement fee of two hundred fifty dollars to the bureau of motor vehicles, which fee shall be deposited in the state treasury[.]
The Ohio Supreme Court has recently ruled on the issue of whether the reinstatement fee, pursuant to former Section 4511.191(L) (2) is "punishment," thereby subjecting a defendant to double jeopardy.[1] State v. Uskert (1999), 85 Ohio St.3d 593. The Court held that "[t]he reinstatement fee of former R.C.4511.191(L) (2) does not violate the Double Jeopardy Clause of theFifth Amendment to the United States Constitution or Section 10, Article I of the Ohio Constitution." Id. at syllabus. Accordingly, Defendant's first assignment of error is without merit.
B.
 The trial court erred by failing to suppress Defendant's statements to police and B.A.C. as the officer was without reasonable suspicion to stop Defendant and lacked probable cause to arrest him.
In his second assignment of error, Defendant has asserted that the trial court erred in failing to suppress evidence that was allegedly obtained in violation of his constitutional rights. Essentially, there were three stages during the traffic stop and arrest when his constitutional rights could have been violated: the initial stop itself, the detention to conduct the field sobriety tests, and the arrest. We will address each in turn.
 1. The Initial Stop.
Defendant has argued that the police officer lacked reasonable suspicion to stop him; therefore, his statements to Officer Reinke and the results of his breath-alcohol test should have been suppressed. Specifically, he has asserted that minor weaving does not constitute a reasonable and articulable suspicion to justify a stop. This Court disagrees.
A traffic stop based on probable cause that a traffic violation has occurred or was occurring is "not unreasonable under the Fourth Amendment to the United States Constitution even if the officer has some ulterior motive for making the stop[.]" Daytonv. Erickson (1996), 76 Ohio St.3d 3, syllabus. "Probable cause exists when the known facts and circumstances are sufficient to warrant a reasonable person in the belief that a crime has been committed." State v. Gibson (July 7, 1999), Lorain App. No. 97CA006967, unreported, at 3-4, citing Ornelas v. United States
(1996), 517 U.S. 690, ___, 134 L.Ed.2d 911, 918. The determination of whether probable cause existed for a traffic stop is a mixed question of law and fact; therefore, this Court will review the determination de novo. Gibson, supra, at 4.
Officer Randall Reinke testified that he first noticed the vehicle operated by Defendant when it was stopped in front of him at a red light. When the light turned green, he saw Defendant's vehicle cross the white line twice. On one of those occasions the vehicle traveled several feet into the other lane of traffic. Officer Reinke continued to follow Defendant as he turned right onto another street. While following Defendant, he observed the vehicle was weaving from the right side of the lane and was left of center at times. He noted that, at some point, half to three-quarters of Defendant's vehicle was in the opposite lane. Officer Reinke testified that he then initiated a traffic stop and approached Defendant's vehicle. He told Defendant that he had pulled him over because "he had been all over the road."
Codified Ordinances of the City of Wadsworth 331.34 provides, in pertinent part:
 No person shall operate a motor vehicle or motorcycle upon any street or highway in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law.
Defendant has not argued, nor was any evidence presented to suggest, that he was weaving because it was necessary for safe operation or in compliance with law. Because Officer Reinke observed that Defendant was violating a traffic ordinance, he had probable cause to stop Defendant's vehicle. Accordingly, Defendant's stop was not improper.
 2. The Detention to Conduct the Field Sobriety Tests.
Defendant has argued that, even if the initial stop was lawful, Officer Reinke could not conduct a "fishing expedition" for evidence of other crimes. Although it is not exactly clear from Defendant's brief, it appears that he has asserted that his prolonged detention for the purpose of the field sobriety tests was unlawful. This Court disagrees.
Probable cause is not necessary to conduct a field sobriety test. State v. Gustin (1993), 87 Ohio App.3d 859, 860. Rather, reasonable suspicion of criminal activity will support further investigation. Id. Essentially, reasonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act. State v. Shook
(June 15, 1994), Lorain App. No. 93CA005716, unreported, at 4. In addition, during a traffic stop, if an officer encounters "additional specific and articulable facts" giving rise to a reasonable suspicion beyond that which prompted the stop, the officer may continue to detain the individual to investigate those new concerns. Id. at 7.
As noted above, the initial traffic stop was not improper. During that stop, Officer Reinke observed factors, beyond those that prompted the stop, that gave him reason to detain Defendant to conduct the field sobriety tests. Officer Reinke testified that Defendant smelled of alcohol, had bloodshot eyes, had difficulty removing his license from his wallet, and admitted to consuming a few drinks. This Court concludes that those four "additional specific and articulable facts" established reasonable suspicion to detain Defendant to investigate a possible violation of Ohio's laws prohibiting the operation of a motor vehicle while under the influence of alcohol. See, e.g., State v. Toler (Jan. 30, 1998), Clark App. No. 97 CA 47, unreported, 1998 Ohio App. LEXIS 232, at *6-7 ("the strong odor of alcohol alone is sufficient to provide an officer with reasonable suspicion of alcohol impairment," such that field sobriety tests are warranted); State v. Blackburn (1996), 115 Ohio App.3d 678, 680
(officer administered field sobriety tests after noticing an odor of alcohol and after Defendant admitted to consuming "a few beers"); Columbus v. Anderson (1991), 74 Ohio App.3d 768, 770
(Defendant's car's speed of 72 in a 55 miles-per-hour zone, a moderate odor of alcohol, and the time of day warranted further investigation by the arresting officer). Accordingly, Defendant's detention was not improper.
 3. The Arrest.
Defendant has argued that Officer Reinke lacked probable cause to arrest him for driving under the influence. This Court has previously held that "[p]robable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent man in believing that an offense was committed." State v. Filler (1995), 106 Ohio App.3d 731, 734, quoting Barberton v. Smith (Feb. 10, 1988), Summit App. No. 13272, unreported, at 3. Because this Court held that the detention to conduct the field sobriety tests was not improper, Officer Reinke could have relied on the results of those tests to determine whether Defendant was under the influence of alcohol.
Officer Reinke testified that, after Defendant admitted to having a few drinks, he asked Defendant to count backwards from sixty-nine to fifty-five. Defendant attempted to count, but he skipped a couple of numbers before stopping at fifty-nine. Officer Reinke then asked Defendant to step out of the vehicle for some additional tests.
Once out of the vehicle, Defendant was unsteady on his feet. Officer Reinke stated that Defendant exhibited all six of the "indicators" on the Horizontal Gazing Nystagmus Test. Officer Reinke then asked Defendant to perform the "walk and turn" and the "one-legged stand" tests. Defendant failed to properly perform either test. Based on Defendant's performance on the sobriety tests, Officer Reinke reasonably concluded that Defendant was under the influence of alcohol and arrested him.
In conclusion, Defendant's bloodshot eyes, his odor of alcohol, his difficulty in producing his driver's license, his admission that he had consumed a few drinks, and his performance on the field sobriety tests provided Officer Reinke with probable cause to believe that Defendant was driving under the influence of alcohol, a violation of R.C. 4511.19(A) (1). Defendant's arrest was not unlawful. See State v. Medcalf (1996), 111 Ohio App.3d 142,148. Consequently, his second assignment of error is overruled.
C.
 The court erred by failing to suppress Defendant's statements and B.A.C. results.
In his third assignment of error, Defendant has argued that the results of his breath-alcohol test should be suppressed because he was not informed of his Miranda rights when Officer Reinke detained him for the field sobriety tests nor when he was formally arrested. The trial court found that Officer Reinke did fail to inform Defendant of his Miranda rights, however, the court determined that that failure was harmless.
The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination. Pursuant to Miranda v. Arizona (1966),384 U.S. 436, 471, 16 L.Ed.2d 694, 722, an individual must be advised of his or her constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Once the police begin a custodial interrogation, they must use procedures to warn defendants of their right to remain silent and their right to counsel. Id.
Miranda procedures are only invoked by a formal arrest or an equivalent restraint on a person's freedom of movement. SeeOregon v. Mathiason (1977), 429 U.S. 492, 494, 50 L.Ed.2d 714,719. The United States Supreme Court has held that individuals who are temporarily detained pursuant to roadside traffic stops are not "in custody" for Miranda purposes. Berkemer v. McCarty
(1984) 468 U.S. 420, 440, 82 L.Ed.2d 317, 334-35. A person detained at a traffic stop is not "in custody" for Miranda
purposes until he or she has been formally arrested or subjected to the function equivalent of a formal arrest.
Although Defendant was not informed of his Miranda rights, he was not entitled to have his statements to Officer Reinke suppressed. Initially, this Court notes that Defendant has failed to point to statements in the record that he claims should have been suppressed. After reviewing the record, however, this Court concludes that Defendant is referring to his admission that he had consumed alcohol earlier that evening. That statement was made to Officer Reinke prior to the officer's decision to conduct field sobriety tests. At the time Defendant made the statement, he was merely subject to a traffic stop and had not been formally arrested or the functional equalivent of a formal arrest. Defendant was not "in custody" for Miranda purposes; therefore, he was not entitled to have his statement suppressed.
Additionally, although Defendant was not informed of hisMiranda rights when he was formally arrested, he was not entitled to have the results of the breath-alcohol test suppressed. It is well settled that the non-verbal results of a breath-alcohol test or field sobriety test are not self-incriminating statements.State v. Henderson (1990), 51 Ohio St.3d 54, 57. Accordingly, aMiranda violation does not render the results of the test inadmissible. Id. at 58. Therefore, the trial court did not incorrectly deny Defendant's motion to suppress his statements and the results of his breath-alcohol test. Defendant's third assignment of error is overruled.
D.
 The court erred in sentencing Defendant to thirty days of house arrest and forty-eight hours of community service.
In his fourth assignment of error, Defendant has argued that the trial court was not authorized to sentence him to house arrest or to sentence him to mandatory community service. According to Defendant, the trial court sentenced him to a term of sixty days of incarceration with fifty-seven days suspended, thirty days of home arrest, forty-eight hours of community service, a seventy-two hour program in lieu of the three days jail time, a ninety-day license suspension with work privileges after fifteen days of suspension, a fine of $250.00 plus court costs, and six months of probation. The trial court stayed Defendant's sentence pending appeal.
Defendant has asserted that the trial court did not have the authority to sentence him to house arrest pursuant to R.C.2929.23(B) (1) and R.C. 4511.99(A) (1).[2] However, despite Defendant's contentions, the trial court did not sentence him to house arrest or mandatory community service. The house arrest and community service were conditions of his probation. Although the trial court was not authorized to sentence Defendant to a term of house arrest, the trial court could, within its discretion, order a period of house arrest as a condition of Defendant's probation. See State v. Dubois (Nov. 9, 1994), Wayne App. No. 2885, unreported, at 3 (concluding that R.C. 2929.23(B) (1) addresses house arrest that is part of a sentence and does not address probation conditions).
A trial court has discretion when determining the conditions of probation. Lakewood v. Hartman (1999), 86 Ohio St.3d 275, 277; R.C. 2951.02. R.C. 2951.02(A) (1) sets forth factors that a court must consider in determining whether to place an offender on probation. In addition to setting forth mandatory conditions of probation for misdemeanor offenders, R.C. 2951.02(C) (1) (a) provides that "[i]n the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, the court may impose additional requirements on the offender[.]" The test to determine whether the conditions of probation are related to "the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, the court may impose additional requirements on the offender" was set forth in State v.Jones (1990), 49 Ohio St.3d 51. Pursuant to Jones, a court should consider whether the condition is reasonably related to rehabilitating the offender, has some relationship to the crime committed, relates to conduct which is criminal or reasonably related to future criminality, and serves the statutory ends of probation. Id. at 53.
Defendant has not argued that the condition of house arrest of his probation fails to meet the sentence set forth in Jones. However, this Court has reviewed the record and concluded that the condition is reasonably related to rehabilitating the offender, has some relationship to the crime committed, relates to conduct which is criminal or reasonably related to future criminality, and serves the statutory ends of probation. Accordingly, the trial court did not err by ordering a period of house arrest as a condition of Defendant's probation.
Defendant has also asserted that the trial court was not authorized to sentence him to mandatory period of community service. He has based that argument on R.C. 2951.02(F) (1), which provides, in pertinent part:
 Supervised community service work shall not be required as a condition of probation or other suspension under this division unless the offender agrees to perform the work offered as a condition of probation or other suspension by the court.
According to Defendant, he did not agree to perform the work; therefore, the court could not require community service as a condition of his probation.
Defendant, however, has failed to point this Court to evidence in the record that he did not agree to perform the community service. Further, although Defendant did provide this Court with a transcript of the sentencing hearing, significant portions of the hearing were classified as "inaudible" by the court reporter. As the appellant, Defendant had the responsibility of providing this Court with a record of the facts, testimony, and the evidentiary matters necessary to support his assignments of error. Volodkevich v. Volodkevich (1989),48 Ohio App.3d 313, 314.
 When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.
Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Thus, in the absence of a complete record, this Court must presume regularity in the trial court's proceedings and accept its judgment. Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 409. Accordingly, this Court must presume that Defendant agreed to perform the community service as a condition of his probation. Defendant's fourth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 BETH WHITMORE FOR THE COURT BAIRD, P.J.
BATCHELDER, J.
CONCUR
[1] Although the Court was considering the version of the statute effective October 17, 1996 and this case involves the version of the statute effective May 15, 1997, the reasoning of the Court still applies to this case as no substantive changes were made to the relevant section of the statute.
[2] R.C. 2929.23(B) (1) provides, in pertinent part:
 [I]f the offense for which an eligible offender is being sentenced is a violation of division (A) of section 4511.19
or of division (D) (2) of section 4507.02 of the revised code, the court may impose a period of electronically monitored house arrest upon the eligible offender only when authorized by and only in the circumstances described in division (A) of section 4511.99 or division (B) of section 4507.99 of the revised code.
R.C. 4511.99(A) (1), the statute that applies to Defendant's conviction, does not expressly authorize house arrest as a sentencing option.