OPINION
{¶ 1} On March 6, 2001, the Knox County Grand Jury indicted appellant, Jeffrey Doup, on one count of rape in violation of R.C. 2907.02, one count of sexual battery in violation of R.C. 2907.03 and one count of intimidation of a witness in violation of R.C. 2921.04. The latter count contained a firearm specification. Said charges arose from incidents involving appellant's daughter.
 {¶ 2} A jury trial commenced on November 13, 2001. Following the disclosure by a juror that he looked up the definition of "hymen" in a dictionary, the trial court declared a mistrial.
 {¶ 3} A second jury trial commenced on January 22, 2002. The jury found appellant guilty as charged, save for the firearm specification. By judgment entry filed February 11, 2002, the trial court sentenced appellant to an aggregate term of fifteen years in prison. The trial court also classified appellant as a sexually oriented offender.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 {¶ 5} "THE STATE BROUGHT DUPLICITOUS RAPE AND SEXUAL BATTERY CHARGES AGAINST MR. DOUP, VIOLATING HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS AND JURY UNANIMITY, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
II
 {¶ 6} "THE TRIAL COURT ERRONEOUSLY ADMITTED INADMISSIBLE HEARSAY TESTIMONY, DENYING MR. DOUP THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
III
 {¶ 7} "THE TRIAL COURT ERRED BY ADMITTING INADMISSIBLE `PRIOR ACTS' TESTIMONY AGAINST MR. DOUP, IN VIOLATION OF MR. DOUP'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
IV
 {¶ 8} "THE TRIAL COURT ERRED BY REFUSING TO PROVIDE AN INSTRUCTION LIMITING THE SCOPE OF THE `PRIOR ACTS' TESTIMONY AT THE TIME MR. DOUP'S TRIAL COUNSEL REQUESTED ONE, IN VIOLATION OF MR. DOUP'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
V
 {¶ 9} "THE TRIAL COURT ERRONEOUSLY PROHIBITED MR. DOUP FROM INTRODUCING EXCULPATORY EVIDENCE IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
VI
 {¶ 10} "THE STATE ERRONEOUSLY COMMENTED ON MR. DOUP'S DECISION NOT TO TESTIFY, IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
VII
 {¶ 11} "THE TRIAL COURT FAILED TO COMPLY WITH THE FELONY SENTENCING STATUTE WHEN ORDERING MR. DOUP TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
VIII
 {¶ 12} "THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT PROHIBITED THE STATE FROM REPROSECUTING MR. DOUP BECAUSE MR. DOUP'S TRIAL COUNSEL'S CONSENT TO A MISTRIAL OF THE NOVEMBER 2001 TRIAL THWARTED THE PRINCIPLES OF DOUBLE JEOPARDY AND BECAUSE `MANIFEST NECESSITY' DID NOT EXIST TO SUPPORT THE MISTRIAL."
IX
 {¶ 13} "MR. DOUP RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 I {¶ 14} Appellant claims the state's action in initiating duplicitous rape and sexual battery charges violated his right to a fair trial, due process and jury unanimity. We disagree.
 {¶ 15} On October 16, 2001, appellant filed motions to dismiss based upon insufficient notice of "what allegations are subject to the counts." Appellant's Brief at 3. By judgment entries filed October 26, 2001, the trial court denied the motions and ordered a more specific bill of particulars. As a result, appellant argues he defended his case "against the fatalistic backdrop the jury could convict him for rape or sexual battery even though it disagrees on which allegation was proven beyond a reasonable doubt." Appellant's Brief at 8.
 {¶ 16} We note despite the jury's verdict of guilty to both counts, the trial court merged the counts at sentencing and ran the sentences concurrent to each other. See, Judgment Entry filed February 11, 2002.
 {¶ 17} The counts of the indictment at issue alleged the following:
 {¶ 18} "First Count: on several occasions between the 1st day of June, 1998 and the 23rd day of January, 2001, in the County of Knox, State of Ohio, JEFFREY A. DOUP, did commit RAPE, by engaging in sexual conduct with Chelsea Doup, the said JEFFREY A. DOUP having purposely compelled Chelsea Doup to submit by force or threat of force, A FELONY OF THE FIRST DEGREE, contrary to and in violation of Section 2907.02(A)(2) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio.
 {¶ 19} "Second Count: on several occasions between the 1st day of June, 1998 and the 23rd day of January, 2001, in the County of Knox, State of Ohio, JEFFREY A. DOUP, did commit SEXUAL BATTERY, by engaging in sexual conduct with Chelsea Doup, not the spouse of JEFFREY A. DOUP, the said JEFFREY A. DOUP being the natural parent of Chelsea Doup, A FELONY OF THE THIRD DEGREE, contrary to and in violation of Section 2907.03(A)(5) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio."
 {¶ 20} Both counts charged sexual conduct. The rape count charged sexual conduct by force or threat of force pursuant to R.C. 2907.02(A)(2). The sexual battery count charged sexual conduct with the offender being the natural parent of the victim pursuant to R.C. 2907.03(A)(5).
 {¶ 21} A second amended bill of particulars was filed on October 29, 2001, stating the following:
 {¶ 22} "First Count: on several occasions between the 1st day of June, 1998 and the 17th day of January, 2001, in the County of Knox, State of Ohio, while at the residence located at 18581 Divelbiss Road, Fredericktown, JEFFREY A. DOUP, did commit RAPE, by engaging in sexual conduct, to wit: vaginal intercourse and/or fellatio, with Chelsea Doup, the said JEFFREY A. DOUP having purposely compelled Chelsea Doup to submit by force or threat of force, A FELONY OF THE FIRST DEGREE, contrary to and in violation of Section 2907.02(A)(2) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio.
 {¶ 23} "MORE SPECIFIC BILL OF PARTICULARS: The sexual conduct occurred for the first time in the summer of 1998, and ended on or about the 14th, 15th or 16th of January 2001. The sexual conduct occurred when the said JEFFREY A. DOUP was alone with Chelsea Doup. The sexual acts occurred either in the bedroom of the said JEFFREY A. DOUP, or the bedroom of Chelsea Doup, or in the kitchen. The first series of sexual acts, approximately five or six times, consisted of fellatio. Vaginal intercourse occurred approximately three times.
 {¶ 24} "Second Count: on several occasions between the 1st day of June, 1998 and the 17th day of January, 2001, in the County of Knox, State of Ohio, while at the residence located at 18581 Divelbiss Road, Fredericktown, JEFFREY A. DOUP, did commit SEXUAL BATTERY, by engaging in sexual conduct, to wit: vaginal intercourse and/or fellatio, with Chelsea Doup, not the spouse of JEFFREY A. DOUP, the said JEFFREY A. DOUP being the natural parent of Chelsea Doup, A FELONY OF THE THIRD DEGREE, contrary to and in violation of Section 2907.03(A)(5) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio."
 {¶ 25} The more specific bill of particulars under Count 2 was identical to the language in Count 1.
 {¶ 26} The indictment and second amended bill of particulars set forth a continuing course of conduct and reference the start and ending dates only.
 {¶ 27} It is undisputed appellant was the victim's natural father. T. at 203. The victim testified to the initiating of the sexual conduct by appellant. T. at 259, 261. It began with fellatio with appellant forcing it upon the victim. T. at 261-262, 265. At the time, the victim was twelve years old and sexually naive. T. at 263-264. Thereafter, appellant made the victim engage in oral sex five or six more times over a two year time span. T. at 267-268, 271-272. At some point, the victim acquiesced to avoid confrontation. T. at 273-274. Vaginal intercourse began about one year later and it was the victim's first experience. T. at 276-277, 281. During the incident, appellant pulled off the victim's clothing, pinned her down, "stuck" his penis inside her and then threatened her. T. at 279-282. A second incident of vaginal intercourse occurred in the summer of 2000. T. at 283. Again, appellant "put his penis" inside the victim's vagina, hit her and threatened her. T. at 284-285. The last incident of vaginal intercourse occurred in January of 2001. T. at 286. During this incident, appellant threatened the victim with a gun. T. at 290-293. The victim testified to a physically abusive home life prior to the sexual assault. T. at 218-221, 275. She maintained each incident of sexual conduct was done with violence and/or threats. T. at 261-262, 273-274, 276, 282, 284-285, 288-289. The victim testified to being scared during each of the incidents because "I didn't know what was going to happen next." T. at 285.
 {¶ 28} Because the issue of credibility is for the trier of fact to determine, State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881, it is logical the victim's acquiescence to oral sex could be perceived as sexual battery as opposed to rape.
 {¶ 29} Appellant argues it is uncertain which allegations led to appellant's convictions and whether the jury was unanimous on the different offenses. We fail to find the manner of indicting in this case led to an unfair trial given the evidence of numerous incidents of sexual conduct and the fact that the trial court merged the counts for sentencing.
 {¶ 30} Duplicity resulting in a lack of a fair trial is predicated on "whether a conviction rests on only one of the offenses or both." Appellee's Brief at 10, citing United States v. Adesida (C.A.6, 1998),129 F.3d 846, 849. Therefore, the issue sub judice is whether the credible evidence led the jury to convict on one or both offenses. We find the answer to be in the negative. From our review of the evidence, the incidents of oral sex engaged in between appellant and the victim may very well have been without force given the victim's acquiescence to the sexual abuse.
 {¶ 31} Upon review we find no violations of appellant's right to a fair trial and due process.
 {¶ 32} Assignment of Error I is denied.
 II {¶ 33} Appellant claims the trial court admitted inadmissible hearsay, thereby violating his right to a fair trial and due process. We disagree.
 {¶ 34} Appellant argues the trial court erred in not redacting the victim's statements on a taped conversation with appellant, in permitting the victim's out-of-court statements made to her friend, Jennifer Fry, and her employer, Doris Pletcher, and in admitting Nurse Gail Hornor's medical report which included the victim's out-of-court statements made to Ms. Pletcher.
 {¶ 35} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 36} The central issue in determining whether a statement is hearsay or not is whether it is "offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Out-of-court statements are admissible in certain instances:
 {¶ 37} "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification.
 {¶ 38} "(2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."
 TAPED CONVERSATION {¶ 39} Detective Sergeant Robert Lee Durbin with the Knox County Sheriff's Office testified the purpose of recording a telephone call between appellant and the victim was to find out what appellant "had to say about the allegation." T. at 182. The victim admitted she called appellant to get him to confess and fabricated a possible pregnancy to force an admission. T. at 255-256, 306-307, 331-332, 333-334. Any admission by appellant as against his interest would be admissible. Evid.R. 801(D)(2). Because the victim testified during the trial and freely admitted to the contrived telephone conversation, we find any statements in the tape were not offered "to prove the truth of the matter asserted."
 VICTIM'S OUT-OF-COURT STATEMENTS {¶ 40} The victim's employer, Ms. Pletcher, and the victim's friend, Ms. Fry, both testified after the victim. Ms. Pletcher testified the victim confided in her on numerous occasions and she told the victim to come to her at any time. T. at 491-494. Defense counsel did not cross-exam Ms. Pletcher. T. at 502. Defense counsel called Ms. Fry to establish the victim was manipulative and had a motive to lie about appellant i.e., "she hated her dad and she wished her parents would get a divorce because it would be a lot easier with him not around." T. at 613.
 {¶ 41} The victim testified to complaining to the two women about the sexual abuse. T. at 235-236, 238-243. The victim's credibility regarding her statements to friends and associates had been the subject of cross-examination. T. at 336-356. We find the victim's statements fall under Evid.R. 801(D)(1)(b) and were "offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive" and were not offered "to prove the truth of the matter asserted."
 NURSE HORNOR'S MEDICAL REPORT {¶ 42} The medical report was marked as an exhibit, State's Exhibit 4, and contains the victim's allegations of sexual abuse. T. at 383. Nurse Hornor testified the history portion of the report was taken for "the purpose of medical diagnosis and treatment to know what type of treatment the patient needs." T. at 385; Evid.R. 803(4). Defense counsel objected to the report and directed redactions from the report, with the trial court's supervision, which included "history of domestic violence between mom and dad with threats to family of death by dad." T. at 388-389, 390-395. What was left in the report that defense counsel objected to was the information that the victim reported incidents of sexual abuse to Ms. Pletcher. As stated supra, both the victim and Ms. Pletcher testified at trial and were subject to cross-examination. The statements were included in the report to establish the history of the sexual abuse allegations and were not offered "to prove the truth of the matter asserted."
 {¶ 43} Assignment of Error II is denied.
 III {¶ 44} Appellant claims the trial court erred in permitting his prior bad acts into evidence. We disagree.
 {¶ 45} Evid.R. 404(B) governs the admissibility of "other crimes, wrongs or acts" and states as follows:
 {¶ 46} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 47} The complained of prior acts admitted into evidence were the use of certain derogatory words in discussing the victim i.e., "[b]itch, piece of shit, asshole," and kicking and hitting the victim with a "bullwhip, 2 by 4, his hand, a belt." T. at 216-218, 220, 221, 239, 269, 451, 456. Contemporaneous with this testimony was the victim's testimony of a physically abusive household wherein the only disciplinarian was appellant. T. at 216-221, 275.
 {¶ 48} The testimony explained the victim's acquiescence to the sexual abuse. The victim testified to an environment of violence in the household and stated the sexual assaults almost always occurred when appellant was in a rage. T. at 262, 269-270, 274-275. These prior acts explained the state of the victim's mind and the environment wherein the sexual assaults occurred.
 {¶ 49} Upon review, we find the trial court did not err in admitting appellant's prior bad acts into evidence.
 {¶ 50} Assignment of Error III is denied.
 IV {¶ 51} Appellant claims the trial court erred in waiting to give the "prior acts" instruction until the end of the trial. We disagree.
 {¶ 52} The trial court has discretionary authority in its duty to instruct on the law as it pertains to the case. State v. Nelson (1973),36 Ohio St.2d 79; Blakemore, supra.
 {¶ 53} Because the instruction was given, there is no proof of any prejudice to appellant. As found in the previous assignment of error, these prior acts were in fact relevant to the charges and were given in context to the incidents of sexual abuse.
 {¶ 54} Assignment of Error IV is denied.
 V {¶ 55} Appellant claims the trial court improperly excluded exculpatory evidence. We disagree.
 {¶ 56} Defense counsel argued an answering machine recording of appellant to Douglas Kelly, Jr., a member of appellant's congregation, was an excited utterance. T. at 550. Evid.R. 803(2) describes an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 57} Mr. Kelly had counseled with appellant two evenings before the answering machine message. T. at 544-545. During the meeting, appellant proclaimed his innocence. T. at 545. A plan was made for appellant to go to Children's Services the next morning. T. at 546. Later that next day, appellant appeared at Mr. Kelly's home to spend the night. T. at 546. Appellant still proclaimed his innocence, maintaining "If I've done this, why can't I remember doing this?" T. at 548. Another plan was made for appellant to see a psychologist the following day. T. at 548-549. Later that following day, Mr. Kelly received the message on his answering machine, purportedly about appellant's appointment with the psychologist. T. at 550. In discussing appellant's demeanor on the tape, Mr. Kelly stated appellant's voice was "very clear. He sounded reassured or confident of what he had thought all along, that he had not done this." T. at 551. Although not specifically proffered for the record, Mr. Kelly clearly indicated the message involved a denial of the allegations. Given the fact the allegations were made at least two days earlier and appellant had discussed the matter with Mr. Kelly and formulated plans on two occasions, we find the trial court was correct in finding the taped statement was not an excited utterance.
 {¶ 58} Assignment of Error V is denied.
 VI {¶ 59} Appellant claims the prosecution made a reference during closing argument to his failure to testify thereby denying him his right against self-incrimination. We disagree.
 {¶ 60} It is axiomatic that the state may not comment on a defendant's failure to testify. Griffin v. California (1965), 380 U.S. 609. After a review of the entire closing arguments, we find the complained of comments were not comments on appellant's failure to testify. We do so for the following reasons.
 {¶ 61} The complained of comments were made in rebuttal. In its entirety, the comments were in defense of the attack on the victim's credibility:
 {¶ 62} "* * * The defense has presented a lot of smoke screens, and they're all designed to hide the truth. The truth is in what Chelsea Doup had to say to you. Now, I suppose if you parade people that have chosen sides and have them say someone is untruthful long enough, a few of the people, they start believing that. But you can only fool some of the people some of the time, not all of the people all of the time. Look to what Chelsea had to say. Now, rape is a secretive crime. There are only two eyewitnesses to that particular crime. And you heard the testimony of Chelsea Doup." T. at 664.
 {¶ 63} These comments were made after defense counsel had attacked the victim's credibility:
 {¶ 64} "One of the real bottom lines in this case, ladies and gentlemen, is, and it's not an adage for the ages or nothing like that, but it's simple. An untruthful story does not become more truthful because it is repeated. An untruthful story does not become more truthful because it's repeated. Now, you've got to decide based on the evidence that you've heard, can I believe basically everything Chelsea Doup says, because that's what I've got to do in order to find that there's proof beyond a reasonable doubt. And can I look away from all the things that make one scratch their head and think, gee, I'm not so sure about this part of what she said. Because you have to look away from all these things, too. If you can't, then you've got a reasonable doubt." T. at 661.
 {¶ 65} Defense counsel presented witnesses opining the victim lacked credibility. T. at 531-532, 566-567, 618-619.
 {¶ 66} The prosecutor made no further comments. In fact, defense counsel's objection cut short any other comments and the prosecutor moved on to another point.
 {¶ 67} Upon review, we find the complained of comments did not violate appellant's right against self-incrimination.
 {¶ 68} Assignment of Error VI is denied.
 VII {¶ 69} Appellant claims the trial court erred in imposing consecutive sentences for rape/sexual battery and intimidation of a witness. We disagree.
 {¶ 70} R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:
 {¶ 71} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
 {¶ 72} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 73} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 74} "(b) That the sentence is otherwise contrary to law."
 {¶ 75} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 76} By judgment entry filed February 11, 2002, the trial court merged the rape and sexual battery convictions, finding them to be "allied offenses of similar import." The trial court sentenced appellant to ten years on the rape/sexual battery convictions and five years on the intimidation of a witness conviction, to be served consecutively, for an aggregate term of fifteen years in prison.
 {¶ 77} Appellant argues the trial court erred in imposing consecutive sentences, violating R.C. 2929.14(E)(4) which states as follows:
 {¶ 78} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 79} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 80} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 81} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 82} When a trial court imposes consecutive sentences under R.C. 2929.14, it must also comply with R.C. 2929.19(B)(2)(c) which requires a sentencing court to "make a finding that gives its reasons for selecting the sentences imposed."
 {¶ 83} The trial court stated consecutive sentences were appropriate by reciting the magic words of the statute, but gave no specific findings in that regard. However, we find the trial court gave reasons in support of consecutive sentences when it stated the following reasons for imposing the maximum prison terms:
 {¶ 84} "The Court has considered the purposes and principles of sentencing as set forth in 2929.11 and the recidivism and seriousness factors listed in Section 2929.12. In support of the decision to impose the maximum sentence, the Court finds that the defendant committed the worst form of the offense and the defendant poses the greatest likelihood of committing future crime. The specific reasons for these findings are as follows: The physical and mental injury suffered by the victim due to the conduct of the defendant was exacerbated because of the age of the victim; to wit, 12 years when the criminal conduct began. The victim of the offenses suffered serious physical harm as a result of the defendant's conduct; to wit, the defendant struck the victim with his hands, kicked the victim, struck the victim with wooden boards and whips resulting in actual physical injuries. The victim of the offenses suffered serious psychological harm as a result of the defendant's conduct; defendant — to wit, the defendant threatened to kill the victim, her brother, and mother if she disclosed the defendant's criminal conduct, and the victim is presently undergoing counseling. The defendant's relationship with the victim facilitated the offenses; to wit, the biological father and care provider. Defendant shows no remorse whatsoever for the offenses committed." February 8, 2002 T. at 5-6.
 {¶ 85} Upon review, we cannot find clear and convincing evidence that the record does not support the consecutive nature of the sentences or that the aggregate sentence is otherwise contrary to law.
 {¶ 86} Assignment of Error VII is denied.
 VIII {¶ 87} Appellant claims the granting of a mistrial by the trial court and the subsequent retrial of the case violated his constitutional right not to be tried twice for the same offenses. We disagree.
 {¶ 88} In State v. Uskert, 85 Ohio St.3d 593, 595, 1999-Ohio-289, the Supreme Court of Ohio discussed double jeopardy as follows:
 {¶ 89} "As this court recognized recently, `the Double Jeopardy Clause of each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.' Gustafson [State v. (1996)], 76 Ohio St.3d at 432, 668 N.E.2d at 441, citing United States v. Halper (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496."
 {¶ 90} During deliberations in the first trial, a juror admitted to looking up the word "hymen" in a dictionary. November 16, 2001 T. at 4.[1] The trial court concluded this was a violation of the juror's oath. Id. at 6-7. After determining there was no "need to voir dire the rest of the jury panel," the trial court declared a mistrial. Id. at 7-8. Both counsel agreed:
 {¶ 91} "THE COURT: I — I don't think there is a need to voir dire the rest of the jury panel. I think it's a mistrial.
 {¶ 92} "MR. WINTERS: I agree.
 {¶ 93} "THE COURT: And do you want to put an objection to that on, John?
 {¶ 94} "MR. BAKER: No, Your Honor.
 {¶ 95} "MR. WINTERS: And who knows whether I wanted one or you wanted one or what the split was or anything. I don't think it makes any difference. And I will offer the opinion, I think a mistrial is a horrible result in this situation, but I don't see any way around it, and I'm sure my client is going to be extraordinarily disturbed, but I don't see any way around it.
 {¶ 96} "THE COURT: Well, he's memorized the definition that he looked up, and he's defined it as covering the opening, and I'm not sure that's what the testimony was, and I think that the definition he's picked up is in contradiction to what the testimony was, and —
 {¶ 97} "MR. WINTERS: The — I agree with that. I mean, he's got a layperson's Webster's Dictionary generic definition, which makes sense, but that's not what the expert testimony was. Exactly." Id. at 7-8.
 {¶ 98} Although appellant characterized the trial court's decision as its own, it appears in the record that all concurred; in fact, defense counsel spoke in favor of a mistrial. We find the mistrial was not a sua sponte motion by the trial court.
 {¶ 99} What complicates this matter is that all of this was done outside appellant's presence in violation of Crim.R. 43(A) which states "[t]he defendant shall be present at the arraignment and every stage of the trial * * *."
 {¶ 100} Appellant received a new trial and now claims the second trial violated double jeopardy. We disagree. The mistrial was not a sua sponte motion by the trial court therefore, jeopardy did not attach. Appellant received the benefit of the mistrial and was retried. Even if we were to conclude the procedures surrounding the mistrial violated Crim.R. 43(A), the only remedy would be a new trial. The remedy has already been afforded to appellant.
 {¶ 101} Assignment of Error VIII is denied.
 IX {¶ 102} Appellant claims he was denied the effective assistance of counsel. We disagree.
 {¶ 103} In order to establish ineffective assistance of counsel, appellant must demonstrate the following:
 {¶ 104} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 105} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011.
 {¶ 106} Appellant argues his trial counsel was ineffective in failing to request a juror unanimity instruction, failing to object to and impeach Nurse Hornor's testimony and consenting to the mistrial of the first trial.
 UNANIMITY INSTRUCTION {¶ 107} Defense counsel failed to request the unanimous jury instruction. Based upon our discussion of the duplicitous charges argument in Assignment of Error I, we find no proof that the outcome of the trial would have been different had defense counsel requested such an instruction.
 NURSE HORNOR'S TESTIMONY {¶ 108} Appellant claims his trial counsel failed to object to Nurse Hornor's testimony regarding the stretching and tearing of an adolescent girl's hymen based upon "the literature." T. at 436-437. It would have been difficult for defense counsel to object to the reference of "the literature" since the testimony was elicited on cross-examination. Defense counsel did call "the literature" into doubt when he suggested to Nurse Hornor that "the literature" was not "terribly helpful for us in this particular case * * * unless we know that the same things that are alleged to have happened in this case happened to those girls in that literature." T. at 437.
 {¶ 109} Appellant also claims his trial counsel did not impeach Nurse Horner's testimony concerning the stretching and tearing of the hymen. Nurse Hornor testified "80 to 90 percent" of girls reporting multiple penile penetration "have normal genital exams." T. at 437. During the first trial, Nurse Hornor testified "66 to 80 percent of girls who have had a penis in their vagina are going to have a normal genital exam." November 14, 2001 T. at 8. However, Nurse Hornor clarified the latter testimony by explaining "for girls who had reached puberty, those numbers are even higher because of the natural things that happen to the body when a girl reaches puberty." Id. at 9.
 {¶ 110} Lastly, appellant claims his trial counsel failed to object to Nurse Hornor's report which contained the statement "[t]wo-thirds of girls with substantiated cases of sexual abuse have normal or non-specific findings on exam * * *." State's Exhibit 4. Given that Nurse Hornor testified to "80 to 90 percent" of girls reporting multiple penile penetration "have normal genital exams," the "two-thirds" statement was actually beneficial to appellant.
 {¶ 111} We find no proof that the outcome of the trial would have been different had defense counsel objected to the complained of evidence.
 MISTRIAL {¶ 112} As we found in Assignment of Error VIII, defense counsel not only consented to the mistrial, but joined in the motion and decision. Even given our discussion of the procedural issue under Crim.R. 43(A), the remedy would be a new trial. A new trial was given. We find no prejudice has been shown nor proof that the outcome would have been different.
 {¶ 113} Assignment of Error IX is denied.
 {¶ 114} The judgment of the Court of Common Pleas of Knox County, Ohio is hereby affirmed.
By Farmer, J., Gwin, P.J. and Wise, J. concur.
Topic: Duplicitous charges; hearsay; evidentiary issues; ineffective asst. of counsel; double jeopardy.
[1] This was brought to the trial court's attention by a note from the jury foreman. November 16, 2001 T. at 3.