**[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 593.]**

THE STATE OF OHIO, APPELLANT, *v.* USKERT, APPELLEE.

[Cite as *State v. Uskert*, 1999-Ohio-289.]

*Criminal law—Motor vehicles—Traffic offenses—Driving while intoxicated—*
    *Administrative license suspension—Reinstatement fee of former R.C.*
    *4511.191(L)(2) does not violate the Double Jeopardy Clause.*

The reinstatement fee of former R.C. 4511.191(L)(2) does not violate the Double
    Jeopardy Clause of the Fifth Amendment to the United States Constitution
    or Section 10, Article I of the Ohio Constitution.

(No. 98-217—Submitted January 27, 1999—Decided June 2, 1999.)

APPEAL from the Court of Appeals for Ashland County, No. 97-COA-01219.

_____

{¶ 1} On March 6, 1997, following a traffic accident, the defendant-appellee, Scott J. Uskert, was arrested and charged with violations of R.C. 4511.19(A)(1), operating a motor vehicle while under the influence of alcohol, and R.C. 4511.19(A)(3), driving with a prohibited concentration of alcohol. Pursuant to R.C. 4511.191, Ohio's implied consent law, defendant submitted to a breath test, and after testing positive for alcohol, defendant was placed under an administrative license suspension, and his license was seized pursuant to R.C. 4511.191.

{¶ 2} On March 11, 1997, at defendant's administrative license suspension hearing, he entered an initial plea of not guilty. On March 21, 1997, defendant's petition for occupational driving privileges was granted effective March 28, 1997. On April 14, 1997, defendant entered a plea of no contest, and it appears from the record that the R.C. 4511.19(A)(1) charge was nolled. At that time, defendant was sentenced to sixty days in jail, with fifty-seven days suspended, placed on probation for one year, ordered to pay a fine of $300, and received a judicial license

suspension of one year, effective April 14, 1997. Defendant's occupational driving privileges were continued.

{¶ 3} On April 22, 1997, defendant filed a motion appealing the constitutionality of the reinstatement fee provision of former R.C. 4511.191(L)(2). Pending defendant's appeal, the reinstatement fee was stayed, and there is no record that the fee was paid. After the Ashland Municipal Court rejected the motion challenging the constitutionality of the statute on May 6, 1997, defendant appealed to the Court of Appeals for Ashland County, which reversed the decision of the trial court.

{¶ 4} This cause is now before this court upon the allowance of a discretionary appeal.

_____

*Betty D. Montgomery*, Attorney General, *Edward B. Foley*, State Solicitor, *Christopher S. Cook*, Assistant Attorney General, and *Richard P. Wolfe*, Ashland City Law Director, for appellant.

*Joseph P. Kearns, Jr.*, for appellee.

_____

**LUNDBERG STRATTON, J.**

{¶ 5} The issue presented to this court is whether the reinstatement fee paid to the Bureau of Motor Vehicles at the conclusion of an administrative license suspension ("ALS") in the amount of $250, pursuant to former R.C. 4511.191(L)(2), is "punishment," thereby subjecting the defendant to double jeopardy. For the following reasons, we find that the reinstatement fee of former R.C. 4511.191(L)(2) is not a "punishment" that would subject the defendant to double jeopardy, and, therefore, we reverse the judgment of the court of appeals.

{¶ 6} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This federal protection is applicable to

the states through the Fourteenth Amendment. *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; *State v. Gustafson* (1996), 76 Ohio St.3d 425, 432, 668 N.E.2d 435, 441. Similarly, Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense."

{¶ 7} As this court recognized recently, "the Double Jeopardy Clause of each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Gustafson*, 76 Ohio St.3d at 432, 668 N.E.2d at 441, citing *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496.

{¶ 8} We considered the double jeopardy implications of the ALS in *Gustafson*. We held that "[t]he Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution do not preclude the criminal prosecution and trial of motorists for driving in violation of R.C. 4511.19 based upon, and subsequent to, the imposition of an administrative license suspension pursuant to R.C. 4511.191." *Id.,* paragraph one of the syllabus.

{¶ 9} We noted, however, that "the need for administrative remedial suspension ends at the point where a criminal conviction of drunk driving is obtained, at which time a court has authority to judicially impose a license suspension in accordance with law and the individual circumstances of the defendant before it." *Id.* at 441, 668 N.E.2d at 447. Thus, we held that "[b]ecause an administrative license suspension loses its remedial character upon judicial adjudication and sentencing for violation of R.C. 4511.19, the Double Jeopardy Clauses of the United States and Ohio Constitutions preclude continued recognition of an administrative license suspension following judicial imposition of criminal

penalties for driving while under the influence of intoxicating drugs, including alcohol." *Id.*, paragraph four of the syllabus.

{¶ 10} The statute in effect at the time of the defendant's suspension, former R.C. 4511.191(L), provided that "[a]t the end of a suspension period under this section, section 4511.196, or division (B) of section 4507.16 of the Revised Code and upon the request of the person whose driver's or commercial driver's license or permit was suspended and who is not otherwise subject to suspension, revocation, or disqualification, the registrar shall return the driver's or commercial driver's license or permit to the person *upon the occurrence of all of the following:*

"(1) A showing by the person that the person had proof of financial responsibility, a policy of liability insurance in effect that meets the minimum standards set forth in section 4509.51 of the Revised Code, or proof, to the satisfaction of the registrar, that the person is able to respond in damages in an amount at least equal to the minimum amounts specified in section 4509.51 of the Revised Code.

"(2) *Payment by the person of a license reinstatement fee of two hundred and fifty dollars* to the bureau of motor vehicles, which fee shall be deposited in the state treasury * * *." (Emphasis added.) Former R.C. 4511.191(L), effective October 17, 1996, 146 Ohio Laws, Part V, 9967.[1]

### I.     Reinstatement fee does not "continue" the ALS

{¶ 11} In this case, the court of appeals based its decision on the premise that the $250 reinstatement fee, "if not paid, would operate to *continue* the administrative license suspension," in violation of our holdings in *Gustafson*. (Emphasis added.) We disagree.

---

1. Effective September 16, 1998, the General Assembly amended R.C. 4511.191 to require only one reinstatement fee of four hundred five dollars if the suspension arises from a single incident or a single set of facts and circumstances. R.C. 4511.191(L)(2) and (3), Am.Sub.S.B. No. 80.

{¶ 12} The length of the ALS is determined by R.C. 4511.191(F), depending upon the number, if any, of prior convictions for OMVI. The ALS terminates at (1) the end of the suspension period designated by R.C. 4511.191(F); (2) the initial appearance if the judge or referee of the trial court or the mayor of the mayor's court determines that one or more of the conditions specified in divisions (H)(1)(a) to (d) of this section have not been met, subject to the imposition of a new suspension under division (B) of section 4511.196 of the Revised Code [R.C. 4511.191(H)(2)]; (3) by the registrar upon receipt of notice of the person's entering a plea of guilty to or of the person's conviction after entering a plea of no contest under Crim.R. 11 to OMVI [R.C. 4511.191(K)]; or (4) the violation for which the driver was arrested and in relation to which the suspension was imposed is adjudicated on the merits by the judge or referee of the trial court or by the mayor of the mayor's court [R.C. 4511.191(H)(2)].

{¶ 13} The suspension ends regardless of whether the driver satisfies the two conditions of R.C. 4511.191(L). The two conditions of R.C. 4511.191(L), proof of financial responsibility and payment of the reinstatement fee, are, as the dissent in the court of appeals' decision pointed out, conditions precedent to the *return* of the license by the registrar.

{¶ 14} Further, as noted by the same dissent, one who drives *after* the termination of the ALS, but who has not paid his or her reinstatement fee, is in violation of R.C. 4507.02(C), whereas one who drives *during* his or her ALS does so in violation of R.C. 4507.02(D)(1).

{¶ 15} The appellate court went on to find that "[i]f the reinstatement fee remains enforceable, then the administrative license suspension does not terminate until payment of the fee. Thus, presumably, unless the trial court vacates both the administrative license suspension and the reinstatement fee upon conviction, then the administrative license suspension may survive appellant's conviction."

**{¶ 16}** Therefore, as a threshold matter, we find that the failure to pay the reinstatement fee of former R.C. 4511.191(L) does not operate to continue the ALS because the ALS terminates as prescribed by R.C. 4511.191(F), (H)(2), or (K), regardless of whether the driver satisfies the two conditions of former R.C. 4511.191(L).

## II.    Double Jeopardy Analysis

**{¶ 17}** We must begin any analysis of a statute by pointing to the well-settled rule that an Act of the General Assembly is entitled to a strong presumption of constitutionality. *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 458, 668 N.E.2d 457, 462; *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163. Further, challenged legislation will not be invalidated unless the challenger establishes the unconstitutional nature of the statute beyond a reasonable doubt. *Hochhausler*, 76 Ohio St.3d at 458, 668 N.E.2d at 462.

**{¶ 18}** In 1989, the United States Supreme Court held that a criminal trial will be precluded by double jeopardy after a civil sanction has been imposed when the civil sanction was "overwhelmingly disproportionate" to the damages caused to the state by the defendant's wrongful conduct. *United States v. Halper*, 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

**{¶ 19}** However, in 1997, the United States Supreme Court largely "disavow[ed] the method of analysis" used in *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901-1902, 104 L.Ed.2d at 501, and reaffirmed the previously established rule exemplified in *United States v. Ward* (1980), 448 U.S. 242, 248-249, 100 S.Ct. 2636, 2641-2643, 65 L.Ed.2d 742, 749. *Hudson v. United States* (1997), 522 U.S. 93, 96, 118 S.Ct. 488, 491, 139 L.Ed.2d 450, 457.

**{¶ 20}** In disavowing *Halper*, the Supreme Court returned to a two-part test that requires the court to examine the purpose of the legislation and its effects in determining whether it is "punitive" so as to constitute a double jeopardy violation. *Hudson*, 522 U.S. at 99, 118 S.Ct. at 493, 139 L.Ed.2d at 459.

{¶ 21} Under the two-part test reiterated in *Hudson*, the court must first ask whether the legislature " 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Id.*, quoting *Ward*, 448 U.S. at 248, 100 S.Ct. at 2641, 65 L.Ed.2d at 749. Second, even in those cases where the legislature " 'has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect,' * * * as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " (Citations omitted.) *Id.*

### A. Legislative Intent

{¶ 22} One need only look to the statute to see that all of the money received under R.C. 4511.191(L) is distributed to various remedial drug and alcohol treatment and intervention funds, reparations and rehabilitation funds, and drug and alcohol education programs. Former R.C. 4511.191(L)(2)(a)-(e). Further, the fact that the Bureau of Motor Vehicles, an administrative agency, is granted the authority to collect the reinstatement fee under R.C. 4511.191(L) is "prima facie evidence that [the legislature] intended to provide for a civil sanction." (Citations omitted.) *Hudson*, 522 U.S. at 103, 118 S.Ct. at 495, 139 L.Ed.2d at 461-462.

{¶ 23} This court noted in *Gustafson* that we have "historically and repeatedly characterized driver's license suspensions imposed pursuant to Ohio's implied consent statutes as being civil in nature and remedial in purpose." *Gustafson* at 440, 668 N.E.2d at 446. Further, we have stated that "R.C. 4511.191 * * * was enacted to protect innocent motorists and pedestrians from injury and death caused by irresponsible acts of unsafe drivers on Ohio streets and highways. The broad purpose of the implied-consent statute is to clear the highways of and to protect the public from unsafe drivers." *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 114, 54 O.O.2d 254, 256, 267 N.E.2d 311, 314.

{¶ 24} Accordingly, we find that the legislature intended that the reinstatement fee of R.C. 4511.191(L)(2) be civil in nature and remedial in purpose. See *Gustafson*.

## B. Purpose or Effect

{¶ 25} Even where the legislature indicates an intent to establish a civil penalty, the second part of the *Hudson* analysis requires the court to inquire as to " 'whether the statutory scheme [is] so punitive either in purpose or effect' " * * * as to " 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " (Citations omitted.) *Hudson*, 522 U.S. at 99, 118 S.Ct. at 493, 139 L.Ed.2d at 459. In order to analyze this prong of the test, it is helpful to refer to the guidelines enunciated in *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644, 661: (1) "[w]hether the sanction involves an affirmative disability or restraint," (2) "whether it has historically been regarded as a punishment," (3) "whether it comes into play only on a finding of scienter," (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence," (5) "whether the behavior to which it applies is already a crime," (6) "whether an alternative purpose to which it may rationally be connected is assignable for it," and (7) "whether it appears excessive in relation to the alternative purpose assigned." Further, " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." (Citations omitted.) *Hudson*, 522 U.S. at 99, 118 S.Ct. at 493, 139 L.Ed.2d at 459, citing *Ward*, 448 U.S. at 249, 100 S.Ct. at 2641-2642, 65 L.Ed.2d at 749.

### 1. Not an affirmative disability or restraint

{¶ 26} We have held that "[i]n Ohio, a license to operate a motor vehicle is a privilege, and not an absolute property right." *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph two of the syllabus. In fact, it is not a substantial private interest, but a state-regulated privilege.

*Maumee v. Gabriel* (1988), 35 Ohio St.3d 60, 63, 518 N.E.2d 558, 561. Further, while the driver is prohibited from driving until the fee is paid, it does not approach the " ' "infamous punishment" of imprisonment.' " *Hudson*, 522 U.S. at 104, 118 S.Ct. at 496, 139 L.Ed.2d at 462, quoting *Flemming v. Nestor* (1960), 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435, 1448.

{¶ 27} Therefore, the suspension of a privilege voluntarily granted does not constitute an affirmative disability or restraint.

### 2. *Not historically regarded as punishment*

{¶ 28} In *Hudson*, the United States Supreme Court noted that it has long been recognized that " 'revocation of a privilege voluntarily granted' " (such as a driver's license) is " 'characteristically free of the punitive criminal element.' " *Hudson*, 522 U.S. at 104, 118 S.Ct. at 495-496, 139 L.Ed.2d at 462, quoting *Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922, and at fn. 2. Further, the court held that " 'the payment of fixed * * * sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings.' " *Id.*, 522 U.S. at 104, 118 S.Ct. at 496, 139 L.Ed.2d at 462, quoting *Helvering* at 400, 58 S.Ct. at 633, 82 L.Ed. at 922.

{¶ 29} Accordingly, the reinstatement fee cannot be said to have been historically viewed as punishment.

### 3. *Scienter not required*

{¶ 30} Clearly, the reinstatement fee of R.C. 4511.191(L) is required for any driver who wishes to reinstate his or her license, regardless of the driver's state of mind at the time of arrest for OMVI. Accordingly, the reinstatement fee requirement is not dependent upon a finding of scienter.

### 4. *Not retribution and deterrence*

{¶ 31} The court of appeals below compared the reinstatement fee of R.C. 4511.191(L) to the tax imposed on confiscated illegal drugs in *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767.

The appellate court found that the reinstatement fee represents an attempt to "exact an additional monetary penalty from the accused, over and above the statutory fine provided for a criminal conviction for OMVI." We disagree.

{¶ 32} The defendant in *Kurth Ranch* was *required* to pay the tax or face the imposition of more serious penalties. Here, the reinstatement fee is voluntary. The driver may choose whether or not to seek reinstatement. No state, civil, or administrative action would be taken against the driver if he or she chose not to reinstate his or her driving privileges, as long as he or she did not drive. See *Thompson v. State* (1997), 229 Ga.App. 526, 528, 494 S.E.2d 306, 308. If the state has the authority to revoke driving privileges as a remedial measure, then the state may revoke such privileges subject to ability to reinstate the driving privileges upon certain conditions. See *id.* This is no more than the suspension of a privilege voluntarily granted.

{¶ 33} Accordingly, the reinstatement fee associated with the ALS cannot be said to promote retribution and deterrence.

5. *Behavior to which it applies is not already a crime*

{¶ 34} Although OMVI is a criminal offense, the ALS is not a criminal sanction. The fact that the OMVI charge may form the basis of the criminal offense does not transform the ALS or the resulting reinstatement fee into a criminally punitive sanction. See *Herbst v. Voinovich* (N.D.Ohio 1998), 9 F.Supp.2d 828, 835-836. Further, to the extent that the underlying behavior is already a crime, "[t]his fact is insufficient to render the money penalt[y] * * * criminally punitive." *Hudson*, 522 U.S. at 105, 118 S.Ct. at 496, 139 L.Ed.2d at 462.

6. *Alternative purpose to which it may be rationally connected*

{¶ 35} As previously noted, the reinstatement fee is not merely used administratively by the BMV to process the return of the license to the driver. Instead, the funds generated from the reinstatement fee are deposited into the state treasury and credited to driver treatment and intervention programs, the reparations

fund, the indigent drivers alcohol treatment fund, the Ohio Rehabilitation Services Commission, and the state treasury to be used for drug abuse resistance education programs. See former R.C. 4511.191(L)(2)(a)-(e).

{¶ 36} Thus, the state has a compelling interest to promptly remove careless drivers from the road as a public safety measure. *Mackey v. Montrym* (1979), 443 U.S. 1, 17-18, 99 S.Ct. 2612, 2620-2621, 61 L.Ed.2d 321, 334. "[T]he right to operate motor vehicles on public roadways of this state may be regulated by the lawful exercise of the police power for the benefit of public safety and welfare." *Gustafson*, 76 Ohio St.3d at 446, 668 N.E.2d at 450 (Douglas, J., concurring). This unlawful conduct continues to be prevalent, as evidenced by the number of OMVI cases that continue to flood the judicial system. *Id.*, 76 Ohio St.3d at 447, 668 N.E.2d at 451 (Douglas, J., concurring).

7.    *Not excessive in relation to the alternative purpose assigned*

{¶ 37} The court of appeals found that the reinstatement fee "has no rational relationship whatsoever to any remedial aspect and purpose of the implied consent statute, which is to prevent persons from driving while a criminal case is pending." While the reinstatement fee of R.C. 4511.191(L) is not used solely for the processing of the return of the license to the driver, we find that it is not disproportionate to the harm caused by one operating a motor vehicle while under the influence of drugs or alcohol.

{¶ 38} In 1995, there were 17,274 alcohol-related traffic fatalities and approximately 300,000 persons injured in alcohol-related crashes.[2] In addition, in 1995, more than 1.4 million people were arrested for driving while intoxicated, nearly ten percent of all arrests made that year.[3] Approximately three in five

---

2. Alcohol Health & Res. World (Sept. 1, 1996) 219, citing National Highway Traffic Safety Administration 1996b.
3. *Id.*

Americans will be involved in an alcohol-related crash at some point in their lives.[4] Alcohol-related traffic crashes cost society $45 billion annually in hospital costs, rehabilitation expenses, and lost productivity.[5]

**{¶ 39}** "When one considers the staggering costs to enforce our DUI laws, to train the officers, to equip them with chemical tests, to pay them to patrol the highways, to provide rescue services and medical attention for those who are involved in alcohol-related accidents, and to initiate drug and alcohol awareness programs, $250 does not seem grossly out of proportion to [the defendant's] role in contributing to this state-wide problem." *State v. Schrock* (Nov. 20, 1998), Trumbull App. No. 97-T-0176, unreported.

**{¶ 40}** Therefore, we find that the reinstatement fee of R.C. 4511.191(L)(2) is not excessive in relation to the danger posed by impaired drivers.

**{¶ 41}** Accordingly, we hold that the reinstatement fee of former R.C. 4511.191(L)(2) does not violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution or Section 10, Article I of the Ohio Constitution.

**{¶ 42}** We reverse the judgment of the court of appeals and remand the cause to the trial court so that it may lift the stay on the reinstatement fee and order that the defendant is required to pay it.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., RESNICK and COOK, JJ., concur.

DOUGLAS, J., concurs in judgment.

F.E. SWEENEY and PFEIFER, JJ., dissent.

---

4. *Id.*, citing National Highway Traffic Safety Administration and National Institute on Alcohol Abuse and Alcoholism 1996.

5. *Id.*, citing National Highway Traffic Safety Administration 1995a.

---

**FRANCIS E. SWEENEY, SR., J., dissenting.**

{¶ 43} No test embraced by this court to determine whether a civil sanction is punitive should undermine the basic principle that the Double Jeopardy Clause prohibits multiple punishments for the same offense. *State v. Gustafson* (1996), 76 Ohio St.3d 425, 432, 668 N.E.2d 435, 441; *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-665. Because I believe that the $250 reinstatement fee sanctioned in former R.C. 4511.191(L) is punitive in nature, it violates this basic principle. Therefore, I would find that the reinstatement fee violates the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. I would affirm the judgment of the court of appeals.

{¶ 44} Sanctions imposed in civil proceedings have been found to violate the Double Jeopardy Clause. See *Hudson v. United States* (1997), 522 U.S. 93, 110, 118 S.Ct. 488, 499, 139 L.Ed.2d 450, 466-467 (Stevens, J., concurring in judgment), and cases cited therein. The concurring opinion recognized that these cases reconfirmed the settled proposition that the government cannot use the civil label to escape entirely the Double Jeopardy Clause's command. The concurring opinion notes that this proposition is extremely important because the states and federal government have an enormous array of civil administrative sanctions at their disposal. Thus, this provides government with the capability of punishing persons repeatedly for the same offense, violating the bedrock double jeopardy principle of finality. *Id.* at 110-111, 118 S.Ct. at 499, 139 L.Ed.2d at 466.

{¶ 45} Here, in order to get his license back after the administrative suspension, the defendant was required to pay the reinstatement fee. This fee was in addition to many other costs an offender is required to pay. R.C. 4511.191(D)(1)(a). For example, a fee was imposed after the court suspension, along with the mandatory fine and court costs. R.C. 4507.45; 4511.99. Fees are

also imposed on the impounded license plates. R.C. 4507.02(F)(1) and (2); 4503.10; 4503.19. In some cases, impoundment/immobilization or vehicle forfeiture penalties may be imposed. R.C. 4507.38; 4511.195.[6] Thus, it becomes painfully obvious that the additional $250 reinstatement fee cannot be viewed in isolation as just a simple $250 fee. See *State v. Gustafson* (June 27, 1995)*,* Mahoning App. No. 94 C.A. 232, unreported, 1995 WL 387619, where that court stressed that the reinstatement fee of former R.C. 4511.191(L) is "nothing more than hidden taxes incorporated by the legislature without the vote of the people. * * * Such costs could legitimately consume more than two weeks salary or wages for someone working on a minimum wage schedule * * *."

{¶ 46} I recognize, and support, the very laudable purpose of the DUI laws, which is to prevent dangerous drivers from being on the road. However, I am concerned with the use of a superficial civil remedy to address the exigencies of the present day drunk-driving problem. See *United States v. Ursery* (1996), 518 U.S. 267, 300, 116 S.Ct. 2135, 2152, 135 L.Ed.2d 549, 574 (Stevens, J., concurring in judgment in part and dissenting in part). Moreover, I believe that governmental action should be scrutinized very closely when government stands to gain with the enforcement of a mandatory fee. See *Harmelin v. Michigan* (1991), 501 U.S. 957, 979, 111 S.Ct. 2680, 2693, 115 L.Ed.2d 836, 854, fn. 9 ("There is good reason to be concerned that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence. Imprisonment, corporal punishment, and even capital punishment cost a State money; fines are a source of revenue. As we have recognized in the context of other constitutional provisions, it makes sense to scrutinize governmental action more closely when the

---

6. In fact, the fees and procedures involved are so onerous that an attorney reference handbook admits that "the *procedure* for the implementation of these penalties is a nightmare that could only have been dreamt by the legislature." (Emphasis *sic.*) Painter & Looker, Ohio Driving Under the Influence Law (1998 Ed.) T.20.1, at 257.

State stands to benefit.").  The license reinstatement fee cannot withstand close scrutiny.  Therefore, I dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____