SINGER, J.
{¶ 1} Appellant, the Ohio Department of Natural Resources, appeals the October 20, 2016 judgment of the Huron County Court of Common Pleas granting summary judgment in favor of appellee, Arlie Risner. We affirm, in part, and reverse, in part.
Assignments of Error
{¶ 2} Appellant sets forth the following assignments of error:
1. THE TRIAL COURT'S DECISION PRESUMES THE RETURN OF THE DEER MEAT AND ANTLERS TO ODNR ALREADY EFFECTUATED RESTITUTION TO THE STATE, BUT THE RETURN OF THE ANIMAL PARTS AFTER THE CRIMINAL CASE DOES NOT AMOUNT TO A PUNISHMENT.
2. THE TRIAL COURT ERRED IN FINDING THAT A CIVIL RESTITUTION CLAIM AND LICENSE REVOCATION ISSUED BY ODNR PURSUANT TO R.C. 1531.201 VIOLATES THE DOUBLE JEOPARDY CLAUSE.
3. THE TRIAL COURT ERRED IN FINDING THAT R.C. 1513.201 VIOLATES DUE (sic) BY FAILING TO PROVIDE NOTICE AND OPPORTUNITY TO BE HEARD.
4. TO THE EXTENT THE TRIAL COURT'S DECISION APPROVED MR. RISNER'S EQUAL PROTECTION ARGUMENT, THE COURT ERRED IN FINDING R.C. 1531.201 UNCONSTITUTIONAL ON THAT BASIS.
Facts
{¶ 3} On February 23, 2011, appellee was convicted in the Norwalk Municipal Court ("municipal court"), following a no contest plea, of hunting and taking an antlered white-tailed deer on private property without permission in violation of R.C. 1533.17, a misdemeanor of the third degree. Appellee was "sentenced to a fine of $200.00, restitution of $90.00, and court costs of $55.00." The judgment entry also notified appellee that his hunting license would be "suspended from February 23, 2011, to February 23, 2012[,]" and that he "shall pay fine and costs within 60 days."
{¶ 4} On April 7, 2011, appellant (or "ODNR") through acting chief, Vicki Mountz, sent a letter informing appellee that because he pled guilty to violating R.C. 1533.17, and because the deer taken had a "gross antler score of 228 6/8 inches[,]" "[t]he Revised Code and Administrative Code place[d] a restitution value on the [deer] at $27,851.33." The letter also informed appellee that pursuant to R.C. 1531.201(D), he would not be afforded an administrative hearing under R.C. 119.06.
{¶ 5} Until appellee paid the $27,851.33 restitution value, his hunting license was to stay suspended, even beyond February 23, 2012. After this date, appellee sought to *1107 reinstate his license to no avail. The record reveals appellant stated appellee must pay the restitution first.
{¶ 6} Appellee filed a complaint for declaratory judgment in the Huron County Court of Common Pleas ("trial court"), in which he attacked the additional restitution imposed in an effort to regain his hunting license. He argued that R.C. 1531.201 was unconstitutional on its face and as applied because "it denies Plaintiffs their particular rights secured by the United States and Ohio Constitutions including but not limited to Plaintiffs' right to * * * due process of law[.]" Appellee also asserted that the deer and antlers were repossessed by appellant and, therefore, any further attempts to seek additional restitution for the deer should have been precluded under the plain language of R.C. 1531.201.
{¶ 7} Based on this restitution preclusion argument, the trial court granted appellee summary judgment on April 9, 2013. The trial court found it unnecessary to consider the constitutional arguments asserted by appellee because the matter was decided on statutory interpretation grounds. Appellee's license was ordered to be reinstated, and appellant subsequently appealed the judgment.
{¶ 8} We reversed the judgment on appeal, holding that the plain language of R.C. 1531.201 allowed repossession of the deer and antlers in addition to the restitution value. See Risner v. Ohio Dept. of Natural Res. , 2013-Ohio-5902, 8 N.E.3d 330 (6th Dist.), aff'd , 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718. We further remanded the case to the trial court to address the unresolved constitutional issues presented below. The Supreme Court of Ohio affirmed our judgment. Id. at ¶ 2.
{¶ 9} The Risner majority held as follows:
For the reasons that follow, R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. Therefore, we hold that R.C. 1531.201(C) mandates that ODNR recover the civil restitution value of an antlered white-tailed deer with a gross score of more than 125 inches from an offender who has been convicted of a violation of R.C. Chapter 1531 or 1533 or division rule. We further hold that R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though it had seized the deer meat and antlers as evidence in the criminal investigation and was awarded possession of those items as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule. We affirm the judgment of the court of appeals.
See id.
{¶ 10} On remand to the trial court, the parties were given an opportunity to reargue the constitutional issues and, after allowing briefing on the matter, the trial court held that R.C. 1531.201 was unconstitutional both on its face and as applied to appellee. The trial court then ordered appellee's hunting license to be reinstated. The judgment was journalized on October 20, 2016, and appellant now timely appeals.
Standard of Review
{¶ 11} When reviewing a trial court's summary judgment decision, the appellate court conducts a de novo review. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Accord *1108 Lopez v. Home Depot, USA, Inc. , 6th Dist. Lucas No. L-02-1248, 2003-Ohio-2132, 2003 WL 1962360, ¶ 7. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E) ; Riley v. Montgomery , 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).
Law and Analysis
{¶ 12} In the assigned errors appellant attacks the trial court's grant of summary judgment, arguing that there is no ground upon which appellee can successfully show that R.C. 1531.201 is unconstitutional.
{¶ 13} In response, appellee asserts that R.C. 1531.201 on its face and as applied to him is unconstitutional because of the constitutional prohibition against double jeopardy, and because his rights to due process, to a jury trial, and to equal protection of law were violated.
Assignment of Error No. 1
{¶ 14} Appellant first argues the return of deer parts is not a punishment. Appellee contends the seizure and forfeiture of the deer parts were ordered in a criminal proceeding and thus were part of the criminal sanction imposed.
{¶ 15} R.C. 1531.02 states in pertinent part that "[n]o person * * * shall take in any manner or possess any number or quantity of wild animals, except wild animals that the Revised Code * * * permit to be taken, hunted, killed, or had in possession, and only at the time and place and in the manner that the Revised Code * * * prescribe[s]."
{¶ 16} Here, appellant killed a white-tail deer in a manner contrary to R.C. 1531.02 because he failed to comply with the time and place restrictions of R.C. 1533.17.
{¶ 17} R.C. 1533.17(A) states that "[n]o person shall hunt * * * upon any lands * * * of another, * * * or shoot, shoot at, catch, kill, injure, or pursue a * * * wild animal thereon without obtaining written permission from the owner[.]"
{¶ 18} As a result, appellant was convicted and ordered to forfeit the deer parts seized by ODNR resulting from the unlawful killing of the deer. The seizure and forfeiture are what ODNR now asserts were not part of the criminal sanction imposed.
{¶ 19} R.C. 1531.21 states that a "defendant in a proceeding for forfeiture or condemnation under a division rule or this chapter or chapter 1533. of the Revised Code shall be tried under the rules of criminal procedure and according to law."
{¶ 20} R.C. 1531.99 states that "[a] court that imposes sentence for a violation of any section of this chapter * * * may require the person who is convicted of or pleads guilty to the offense, in addition to any fine, term of imprisonment, seizure, and forfeiture imposed, to make restitution[.]"
{¶ 21} These statutes read in conjunction indicate that the penalties of seizure and forfeiture at issue are "criminal in nature." Compare State v. Boger , 6th Dist. Ottawa No. OT-86-60, 1987 WL 8433, *1 (Mar. 27, 1987), with Dept. of Natural Res., Div. of Wildlife v. Prescott , 42 Ohio St.3d 65, 66, 537 N.E.2d 204 (1989) ("As a general rule, forfeiture of property is a civil or in rem proceeding.").
{¶ 22} Consistent with the Supreme Court of Ohio's analysis of appellee's case, we find "ODNR * * * seized the deer meat and antlers as evidence in the criminal investigation and was awarded possession of those items as a result of a conviction [.]" (Emphasis added.) Risner , 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, at ¶ 2.
*1109 {¶ 23} Consequently, we find the seizure and forfeiture of the deer parts were imposed as part of appellee's original criminal punishment. The first assigned error is without merit.
Assignment of Error No. 2
{¶ 24} Appellant secondly argues the trial court erred in finding appellee was subject to double jeopardy when the civil restitution value was imposed by ODNR. Appellee contends that under state police power and the public trust doctrine it has the right to proceed civilly to recover the final restitution value.
{¶ 25} R.C. 1531.201(B) provides that "[t]he chief of the division of wildlife or the chief's authorized representative may bring a civil action to recover possession of or the restitution value of any wild animal held, taken, bought, sold, or possessed in violation of this chapter * * * against any person who held, took, bought, sold, or possessed the wild animal." (Emphasis added.).
{¶ 26} An "action" is defined as "an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense." See R.C. 2307.01.
{¶ 27} R.C. 1531.201(C)(1) states in relevant part, "[i]n addition to any restitution value established in division rule, a person who is convicted of a violation of this chapter * * * governing the holding, taking, buying, sale, or possession of an antlered white-tailed deer with a gross score of more than one hundred twenty-five inches also shall pay an additional restitution value[.]"
{¶ 28} R.C. 1531.201(D) states that "[u]pon conviction of holding, taking, buying, selling, or possessing a wild animal in violation of this chapter * * * the chief shall revoke until payment of the restitution value is made each hunting license, fur taker permit, [or] deer permit * * * issued to that person under this chapter[.]"
{¶ 29} The Double Jeopardy Clause is stated within the Fifth Amendment to the United States Constitution which provides, in part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This prohibition has been held to be applicable to the states by operation of the Fourteenth Amendment. Benton v. Maryland , 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Moreover, the Ohio Constitution contains a similar protection in Section 10, Article I which states, "[n]o person shall be twice put in jeopardy for the same offense." See State v. Martello , 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7.
{¶ 30} There are three protections offered by the Double Jeopardy Clause to a criminal defendant: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. North Carolina v. Pearce , 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
{¶ 31} The Supreme Court of Ohio employs a two-prong approach for determining whether a particular penalty is a criminal punishment for double jeopardy purposes. Martello at ¶ 18 ; Hudson v United States , 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).
Hudson Prong 1-Legislative Intent
{¶ 32} Under Hudson , the first prong regards "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." (Internal *1110 quotations omitted.) Martello at ¶ 18, citing Hudson at 99, 118 S.Ct. 488.
{¶ 33} Here, R.C. 1531.201(B) explicitly refers to the "restitution value" as allowable in a "civil action." Thus we find the General Assembly has explicitly indicated an intention to establish a civil penalty.
Hudson Prong 2-Purpose or Effect
{¶ 34} Secondly, under Hudson , even in those cases where the legislature has indicated an intention to establish a civil penalty, courts have inquired further to find "whether the statutory scheme was so punitive in purpose or effect as to transform what was clearly intended to be a civil remedy into a criminal penalty." (Citations omitted.) Martello .
{¶ 35} "Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at ¶ 20, quoting Hudson , 522 U.S. at 99, 118 S.Ct. 488.
{¶ 36} In determining whether a civil remedy was transformed into a criminal penalty, there is a list of factors for us to consider. We will consider each factor individually to determine whether R.C. 1531.201(B) violates double jeopardy.
(1) "Whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."
Hudson at 99-100, 118 S.Ct. 488, quoting Kennedy v. Mendoza-Martinez , 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1961).
{¶ 37} The first factor is "[w]hether the sanction involves an affirmative disability or restraint." Here, the consequence of not paying the civil restitution value only results in the revocation of appellee's hunting license. There is no imposition of physical restraint, and so it does not resemble the "infamous punishment of imprisonment," the classic form of affirmative disability or restraint. State v. Lyons , 1st Dist. Hamilton No. C-060448, 2007-Ohio-652, 2007 WL 490912, ¶ 15. Accordingly, we find this first factor weighs against double jeopardy.
{¶ 38} The second factor is "whether [the sanction] has historically been regarded as punishment." We contemplate two considerations in our evaluation of this factor.
{¶ 39} Primarily we consider "[t]he ownership being in the people of the State-the repository of the sovereign authority, * * * it necessarily results that the legislature * * * may withhold or grant to individuals the right to hunt and kill game, or qualify and restrict it, as, in the opinion of its members, will best subserve the public welfare." See State v. Hanlon , 77 Ohio St. 19, 28, 82 N.E. 662 (1907). Here, and in terms of the revocation of appellee's hunting license, the state has historically been able to qualify rights and restrict activity related to hunting wildlife, through its licensing scheme.
{¶ 40} Next we consider that under " R.C. 1531.02, criminalizing certain conduct with respect to wildlife resources, does not detract from [the] ability of the state to proceed civilly." State v. Bowling Green , 38 Ohio St.2d 281, 283, 313 N.E.2d 409 (1974). Here, and in terms of the civil restitution value, the state has historically *1111 been able to proceed civilly for violations of the law governing wildlife. Accordingly, based on traditional common law and historical treatment of statutory wildlife civil actions, we find this second factor weighs against double jeopardy.
{¶ 41} The third factor is "whether [the sanction] comes into play only on a finding of scienter." Here, both R.C. 1531.02 and 1533.17(A) state that "[n]o person shall," which this court finds to impose strict liability in the context of mala prohibita offenses. See , e.g. , State v. Hymore , 6th Dist. Lucas No. L-95-361, 1996 WL 549237, *3 (Sept. 30, 1996). In turn, R.C. 1531.201 requires the civil restitution value be paid before appellee can receive his hunting license, after its revocation, "regardless of [his] state of mind" at the time of the violation. State v. Uskert , 85 Ohio St.3d 593, 599, 709 N.E.2d 1200 (1999). Accordingly, we find this third factor weighs against double jeopardy.
{¶ 42} The fourth factor is "whether [the sanction]'s operation will promote the traditional aims of punishment-retribution and deterrence."
{¶ 43} Here, R.C. 1531.201(B) and (C) were adopted by the General Assembly in an effort to establish "greater deterrence to pouching." See Risner , 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, at ¶ 21. The record reflects that ODNR, through then chief of the Division of Wildlife, Dave Graham, testified as follows in an effort to garner support for H.B. 238, which codified the current process articulated in R.C. 1531.201(B) and (C).
Good morning * * * The face of the poacher in our state has changed dramatically over the years. Violations of wildlife laws in the past could frequently be attributed to attempts to put food on the table, but today's violations are often the result of a very different motivation. Today we routinely see cases of commercialization of the state's wildlife. The end result of this theft of Ohio's wildlife robs the state's law-abiding sportsmen and women of opportunity and robs the state's economy of valuable resources. An example of the type of poaching we see today is the criminal who targets a particular trophy white tailed deer. One ring of poachers in central Ohio made a habit of driving around until they located a true trophy deer, then worked together to sneak on to land where they had no permission to be, kill the buck and stealthily get the animal, or just its head, off the property. Sometimes poachers shoot the animal and take the antlers, leaving the meat to rot. Sale of really big antlers on the black market can easily net up to twenty-plus thousand dollars. Legal hunters can go a lifetime hoping for the opportunity to take the trophy buck.
Wildlife restitution values have not been updated in about 20 years. House Bill 238 paves the way for total reform which would allow restitution values to become equitable with current conditions. The Division of Wildlife's current authority is in ORC 1531.201 where restitution value for a whitetail deer is $400. Having researched common prices for taking a trophy buck in a hunting preserve we found that a 190-class buck costs about $15,000. If a poacher takes an animal in this class currently it is a-third degree misdemeanor on the first offense, advancing to a first degree misdemeanor on a second offense. Depending on the degree of misdemeanor, fines between $0 and $1000 and up to 6 months jail could be imposed, along with $400 restitution for the deer, all at the judge's discretion. It is not uncommon in some jurisdictions for fines to be $100 or less, jail time nonexistent restitution negligible. The bottom line is that current *1112 penalties and restitution values are not a deterrent to poaching.
See Wild Animals-Restitution Value: Hearing on 2007 Am.H.B. No. 238 Before the S. Environment & Natural Resources Comm. 127th Gen. Assem. (Oct. 10, 2007) (Dave Graham, Chief, Div. of Wildlife).
{¶ 44} Based on our review of the record, and as stated by the Risner court, "the legislative intent in enacting R.C. 1531.201 is to preserve Ohio's wildlife for legitimate hunters and naturalists and to provide a significant deterrent to those individuals who seek to harm the state's aesthetic, economic, and recreational interests." Id. Therefore, we find the aims of the civil restitution and license revocation are certainly retribution and deterrence.
{¶ 45} We note, however, that "deterrence can serve both civil and criminal goals," and a civil remedy provided for under "tort law * * * attempts to deter certain conduct but neither imposes punishment nor is criminal in nature." (Internal citations omitted.) State v. Smith , 4th Dist. Hocking No. 97CA10, 1998 WL 470495, *6 (July 20, 1998). Accordingly, this fourth factor weighs in favor of double jeopardy, but we find its effect is nevertheless slight on our ultimate determination under Hudson .
{¶ 46} The fifth factor is "whether the behavior to which [the sanction] applies is already a crime." Here, violations of R.C. 1531.02 and 1533.17 are criminal offenses. However, the fact that the violations may form the basis of a criminal offense does not transform the civil restitution or license revocation into a criminally punitive sanction. See Uskert , 85 Ohio St.3d at 600, 709 N.E.2d 1200. "[T]o the extent that the underlying behavior is already a crime, 'this fact is insufficient to render the money penalty * * * criminally punitive.' " Id. , citing Hudson , 522 U.S. at 105, 118 S.Ct. 488, 139 L.Ed.2d 450. Accordingly, this fifth factor weighs against double jeopardy.
{¶ 47} The sixth factor is "whether an alternative purpose to which [the sanction] may rationally be connected is assignable for it." Here, R.C. 1531.17 establishes a "Wildlife Fund," to which all restitution received by ODNR under R.C. 1531.201 and 1531.99 is to be deposited.
{¶ 48} R.C. 1531.17, in pertinent part, states:
All fines, penalties, and forfeitures arising from prosecutions, convictions, confiscations, or otherwise under this chapter and Chapters 1517. and 1533. of the Revised Code, unless otherwise directed by the director of natural resources, shall be paid by the officer by whom collected to the director and by the director paid into the state treasury to the credit of the wildlife fund, which is hereby created, for the use of the division of wildlife.
{¶ 49} Under this sixth factor, the Uskert court found an alternative purpose to which a reinstatement fee, imposed by the Bureau of Motor Vehicles after a driving-while-intoxicated violation, was rationally connected enough to weigh this factor against double jeopardy. See Uskert . The Uskert court stated:
[T]he reinstatement fee is not merely used administratively by the BMV to process the return of the license to the driver. Instead, the funds generated from the reinstatement fee are deposited into the state treasury and credited to driver treatment and intervention programs, the reparations fund, the indigent drivers alcohol treatment fund, the Ohio Rehabilitation Services Commission, and the state treasury to be used for drug abuse resistance education programs. See former R.C. 4511.191(L)(2)(a)-(e).
*1113 Thus, the state has a compelling interest to promptly remove careless drivers from the road as a public safety measure. Mackey v. Montrym , 443 U.S. 1, 17-18, 99 S.Ct. 2612, 2620-2621, 61 L.Ed. 2d 321, 334 (1979). The right to operate motor vehicles on public roadways of this state may be regulated by the lawful exercise of the police power for the benefit of public safety and welfare.
See Uskert , 85 Ohio St.3d at 600, 709 N.E.2d 1200.
{¶ 50} Similar to the alternative purpose of the reinstatement fees imposed by the BMV, the alternative purposes of fees imposed by ODNR, as highlighted in R.C. 1531.17, are sufficient for us to find this factor rationally connected to legitimate governmental concerns. In specific, the funds of the restitution values sought under R.C. 1531.201 and 1531.99 not only replace the loss of wildlife as property of the state, but also go toward efforts to manage, preserve and conserve wildlife and resources for the benefit of hunters, naturalists and, ultimately, all people of the state.
{¶ 51} The legislative history of H.B. 238, which codified the current restitution values and calculation, supports the importance of the stated alternative purposes. Then chief Graham testified as follows:
Hunting, fishing, and other forms of wildlife recreation are extremely important to our economy. Approximately half a million people hunt and about 1.4 million people fish in Ohio. Each year legal hunting and fishing combined contribute over $3.3 billion in economic impact to the state. And wildlife watchers spend more than 600 million a year on wildlife viewing and feeding supplies. We want to keep this industry healthy for both economical and recreational reasons. * * *
See Wild Animals-Restitution Value: Hearing on 2007 Am.H.B. No. 238 Before the S. Environment & Natural Resources Comm. 127th Gen. Assem. (Oct. 10, 2007) (Dave Graham, Chief, Div. of Wildlife). Accordingly, we find this sixth factor weighs against double jeopardy.
{¶ 52} The seventh and final factor is "whether [the sanction] appears excessive in relation to the alternative purpose assigned." Here, we find the restitution value imposed under R.C.1531.201(C) is justifiable by ODNR, although we do note that the amount imposed on appellee is extraordinarily high.
{¶ 53} R.C. 1531.201(C)(1) states that the additional restitution "is calculated using the following formula: Additional restitution value = ((gross score-100) 2 x $1.65)."
{¶ 54} R.C. 1531.201(C)(2) also provides:
The gross score of an antlered white-tailed deer shall be determined by taking and adding together all of the following measurements, which shall be made to the nearest one-eighth of an inch using a one-quarter-inch wide flexible steel tape:
(a) Inside spread of the main antler beams, not to exceed the length of the longest main antler beam;
(b) Length of the right main antler beam;
(c) Length of the left main antler beam;
(d) Total length of all abnormal points;
(e) Total length of all normal points as measured from the nearest edge of the main antler beam over the outer curve to the tip. To determine the baseline for normal point measurement, the tape shall be laid along the outer curve of the antler beam so that the top edge of the tape coincides with the top edge of the antler beam on both sides of the point.
*1114 (f) Circumference taken at the narrowest place between the antler burr and the first normal point on the right main antler beam. If the first normal point is missing, the circumference shall be taken at the narrowest place between the antler burr and the second normal point.
(g) Circumference taken at the narrowest place between the first normal point and the second normal point on the right main antler beam. If the first normal point is missing, the circumference shall be taken at the narrowest place between the antler burr and the second normal point.
(h) Circumference taken at the narrowest place between the second normal point and the third normal point on the right main antler beam;
(i) Circumference taken at the narrowest place between the third normal point and the fourth normal point on the right main antler beam. If the fourth normal point is missing, the circumference shall be taken halfway between the third normal point and the tip of the main antler beam.
(j) Circumference taken at the narrowest place between the antler burr and the first normal point on the left main antler beam. If the first normal point is missing, the circumference shall be taken at the narrowest place between the antler burr and the second normal point.
(k) Circumference taken at the narrowest place between the first normal point and the second normal point on the left main antler beam. If the first normal point is missing, the circumference shall be taken at the narrowest place between the antler burr and the second normal point.
(l) Circumference taken at the narrowest place between the second normal point and the third normal point on the left main antler beam;
(m) Circumference taken at the narrowest place between the third normal point and the fourth normal point on the left main antler beam. If the fourth normal point is missing, the circumference shall be taken halfway between the third normal point and the tip of the main antler beam.
Antlers may be measured at any time; no drying time is required. See R.C. 1531.201(C)(2)(a)-(m).
{¶ 55} In the record ODNR provided a scoring sheet in which it reported that the white-tailed deer at issue had an "inside spread of main antler beams" of 20.5 inches; a "total of lengths of abnormal points" of 45 inches; a "right antler" total spread of 80.875 inches; and, a "left antler" total spread of 82.375 inches. This totaled in a "final score" of 228.75 inches and, based on that final score and a minimum restitution value of $500, the final restitution value imposed was $27,851.33.
{¶ 56} Hence based on the calculation process of R.C. 1531.201(C)(2)(a)-(m), the restitution amount imposed on appellee is reasonable, because it was solely due to appellee killing a white-tail deer with a final antler measurement score of 228.75 inches. Accordingly, this factor weighs against double jeopardy.
{¶ 57} After considering the Kennedy factors listed above, we find the record does not provide the clearest proof that the civil remedy under R.C. 1531.201 has transformed into a criminal punishment. Martello , supra ; Hudson , supra . Consequently, the second assigned error is well-taken.
Assignment of Error No. 3
{¶ 58} Appellant argues appellee and other similarly situated offenders are not to be afforded due process under *1115 R.C. 1531.201. Appellee argues R.C. 1531.201 violates due process where no hearing is held to be heard on the matter or present objections.
{¶ 59} R.C. 1531.201(D) states that "[u]pon conviction of holding, taking, buying, selling, or possessing a wild animal in violation of this chapter * * * the chief shall revoke until payment of the restitution value is made each hunting license, fur taker permit, [or] deer permit * * * issued to that person under this chapter[.]"
{¶ 60} Notice provisions follow as such:
Upon revoking a person's license, permit, or stamp or a combination thereof under this division, the chief immediately shall send a notice of that action by certified mail to the last known address of the person. The notice shall state the action taken, order the person to surrender the revoked license, permit, or stamp or combination thereof, and state that the department of natural resources will not afford a hearing as required under section 119.06 of the Revised Code.
See R.C. 1531.201(D).
{¶ 61} R.C. 119.06 states in pertinent part:
The following adjudication orders shall be effective without a hearing:
(A) Orders revoking a license in cases where an agency is required by statute to revoke a license pursuant to the judgment of a court;
(B) Orders suspending a license where a statute specifically permits the suspension of a license without a hearing; * * *
{¶ 62} Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Palazzi v. Estate of Gardner , 32 Ohio St.3d 169, 172, 512 N.E.2d 971 (1987). The notice must convey the required information and afford time for those interested in making an appearance to protect rights. Id.
{¶ 63} Here, we find appellee was not afforded proper notice or an opportunity to be heard regarding the final restitution value imposed in April 2011 following his sentencing. Specifically, the record reveals appellee was neither informed of the $27,851.33 restitution value prior to entering his plea, nor granted a hearing subsequent to being informed of the antler measurement score and sought value. The imposed sentence was a year license suspension, a $200 fine, $90 in restitution, and court costs of $55. There is no evidence in the record appellee had any notice of the $27,851.33 value during sentencing and ODNR concedes such notice was not provided.
{¶ 64} In addressing the issue, the Huron County Court of Common Pleas stated:
Thus, both facially and as applied in this matter, Mr. Risner was not provided meaningful notice of the penalties he faced at the time of his plea, nor was he provided access to a hearing to challenge the findings of ODNR prior to the imposition of the indefinite license suspension and the requirement to pay the $27,851.33 civil restitution value. Mr. Risner's argument that the unilateral determination of the amount of restitution also violates his right to a jury trial dovetails with this Court's finding that at minimum he has a right to notice and an opportunity for a hearing, whether before a jury or not, before these penalties can be imposed. It is important to note that the Municipal Court did not make any findings with regard to the size or score of the deer and the statute provides no mechanism for Mr. Risner *1116 to challenge the ODNR finding at any hearing.
* * * There seems to be no just reason why Mr. Risner would not be entitled to notice and an opportunity to be heard in this matter. Perhaps, if the Municipal Court had made findings regarding the score of the deer and had informed Mr. Risner of the $27,851.33 of civil restitution to be automatically imposed based on that finding and further, if Mr. Risner then entered a plea recognizing those consequences and either admitted guilt or plead no contest to facts set forth to justify those penalties, then he could be seen to have had adequate notice and opportunity to be heard. However, there is nothing in the Court record to suggest that was the case and the records of the Municipal Court clearly indicate otherwise.
See Risner v. Ohio Dept. of Natural Resources , Huron C.P. No. CVH-2012-0385, *5-6 (Oct. 20, 2016).
{¶ 65} Appellant asserts that, because R.C. 1531.201(D) states that an administrative hearing would not be afforded, appellee was not to be given proper notice or an opportunity to be heard on the matter of the final restitution value. We disagree. First, ODNR could have raised the issue in, and called for a subsequent restitution hearing by, the municipal court. Further, ODNR could have initiated a civil action after appellee's prosecution to address the restitution issue rather than sending appellee a letter requesting the $27,851.33 without due process.
{¶ 66} As an example we point to State v. Eller , where the Twelfth District Court of Appeals held the issue was properly addressed at a subsequent restitution hearing because ODNR proved the antler measurement score and process in deriving the restitution value were accurate. State v. Eller , 197 Ohio App.3d 738, 2012-Ohio-546, 968 N.E.2d 622 (12th Dist.). The Eller court referred to the "minimum" and "additional restitution" imposed under R.C. 1531.201 as "financial sanctions for a misdemeanor," which were stated to be governed pursuant to R.C. 2929.28(A)(1). Id. at ¶ 12.
{¶ 67} In that regard, the Eller court stated, "[i]f the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution." (Emphasis added.) Id. at ¶ 14. The court then stated, "[i]f the court holds an evidentiary hearing, at the hearing the victim or survivor has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender." See id. , citing R.C. 2929.28 and 1531.02.
{¶ 68} Consistent with the procedural process and underlying rationale offered in Eller , we find that due process principles require that appellee and similarly situated offenders be afforded notice and an opportunity to be heard to protect rights and present objections.
{¶ 69} Furthermore, we note that R.C. 1531.201(B) provides that ODNR may initiate a "civil action to recover * * * the restitution value[.]" Such civil "action" would involve "process, pleadings, and en[d] in a judgment or decree [.]" See R.C. 2307.01 (defining "action"); Civ.R. 3 (stating that a "civil action is commenced by filing a complaint").
{¶ 70} Based on review of the April 7, 2011 letter sent by ODNR, and the record beyond the date of the letter, there was no complaint, process, pleading, judgment or decree regarding the final restitution value. See R.C. 2307.01, supra . Particularly, ODNR never initiated a civil action prior to or after sending its letter and, as noted, ODNR failed to notify appellee of the restitution *1117 value while prosecuting him in municipal court. We find sending the letter was not akin to initiating a civil action in accordance with R.C. 1531.201(B) and, thus, appellee should have been afforded proper procedural process to challenge findings and be heard on the final restitution matter.
{¶ 71} Accordingly, the third assignment of error is not well-taken.
Assignment of Error No. 4
{¶ 72} Appellant lastly challenges appellee's equal protection of law argument that R.C. 1531.201 violates a right to a jury trial. Appellant contends "there is no class distinction in R.C. 1531.20 that provides some individuals with the right to a jury trial and denying others the same right."
{¶ 73} Based on our review, neither the trial court judgment nor any citation to the record in appellant's brief reveals that the issue of a right to jury trial was dispositive or ever at issue in the case. Essentially, appellant has not identified in the record where the issue was addressed in error. See Tretola v. Tretola , 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, 2014 WL 7014740, ¶ 37 ("An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."). Thus, because appellant has failed to "identify in the record the error on which the assignment of error is based[,]" we decline to address ODNR's fourth assignment. See App.R. 12(A)(2). Further, we note there is a sufficient ground to dispose of the fourth assigned error because finding merit to support the grant of summary judgment in the third assigned error renders the fourth moot. See App.R. 12(A)(1)(c).
{¶ 74} Accordingly, we decline to address the fourth assigned error.
Conclusion
{¶ 75} The judgment of the Huron County Court of Common Pleas is affirmed, in part, and reversed, in part. Appellant is to vacate appellee's license suspension, remove from its record any reference to the suspension based on unpaid restitution and, if otherwise valid and necessary, return to appellee a right to receive and maintain his hunting license in accordance with applicable law. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.
Judgment affirmed, in part, and reversed, in part.
James D. Jensen, P.J.
Christine E. Mayle, J.
CONCUR.